527 F.Supp. 666 (1981)
RYDER TRUCK RENTAL, INC. and National Union Fire Insurance Company of Pittsburgh, Pennsylvania, Plaintiffs,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.
No. 80-1197C(C).
United States District Court, E. D. Missouri, E. D.
November 6, 1981.
*667 Daniel T. Rabbitt, Jr., Louis, Mo., for plaintiffs.
Richard O. Funsch, St. Louis, Mo., for defendant.

MEMORANDUM
MEREDITH, District Judge.
Plaintiffs have brought this action for a declaration of their status and rights under a policy of insurance issued by defendant and to recover from defendant a pro rata share of amounts paid under an insurance settlement. The matter is now before the Court for a decision on the merits based upon a record stipulated by the parties and supporting memoranda of law.
This Court has jurisdiction over the action in that there is complete diversity of *668 citizenship between the parties, and the amount in controversy, exclusive of interest and costs, exceeds that sum of Ten Thousand Dollars ($10,000). 28 U.S.C. § 1332.

BACKGROUND
The parties in this action have agreed on and stipulated to the following facts.
Plaintiff Ryder Truck Rental, Inc. ("Ryder") is a corporation organized and existing under the laws of the State of Florida and maintains it principal place of business in the State of Florida.
Plaintiff National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") is a corporation organized and existing under the laws of the State of Pennsylvania and maintains its principal place of business in the State of New York.
Defendant, United States Fidelity and Guaranty Company ("U.S.F.&G.") is a corporation organized and existing under the laws of the State of Maryland and maintains it principal place of business in the State of Maryland.
National Union issued a policy of automobile liability insurance to its insured, plaintiff Ryder, designated as Policy Number GLA 53-28955, and that policy was in effect on November 22, 1978.
Defendant, U.S.F.&G., issued a policy of automobile liability insurance to its insured, Appalachian Timber Service, Inc. ("Appalachian"), designated as Policy Number ICCB60341, and that policy was in effect on November 22, 1978.
On or about August 23, 1978 Ryder and Appalachian entered into a lease agreement whereby Ryder leased a tractor to Appalachian to be used by Appalachian to pull a trailer owned by Appalachian to haul its products in the continental United States.
On November 22, 1978, an employee of Appalachian named James W. Poe was operating the aforesaid tractor leased by his employer from Ryder, and said tractor was pulling a trailer owned by Appalachian in a westerly direction on Interstate 64 near Fairview Heights, Illinois. Mr. Poe collided with an automobile operated by one Louis E. Lauerman, also headed in a westerly direction and to the right of Mr. Poe. The collision caused the Lauerman automobile to leave the traveled portion of the highway and overturn, resulting in damage to the automobile and personal injury to Mr. Lauerman.
On or about February 29, 1979, Mr. Lauerman filed suit against Ryder, James W. Poe, and Appalachian in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, Cause Number 79 L 149. In that lawsuit Mr. Lauerman sought damages for personal injuries and property damage sustained in the collision of November 22, 1978.
On February 6, 1979 and again on May 18, 1979 Ryder, on behalf of itself and National Union, called upon U.S.F.&G. by letter to contribute equally in the settlement of the claim asserted by Mr. Lauerman as a result of the collision of November 22, 1978.
Thereafter, Ryder and National Union settled with Mr. Lauerman for his personal injuries and property damage and paid the entire settlement sum of Sixty-Five Thousand Dollars ($65,000) to Mr. Lauerman, his wife, and his attorney, whereupon on June 12, 1979, said lawsuit was dismissed with prejudice upon a "Stipulation to Dismiss". Under the terms of that "Stipulation", Mr. Lauerman settled his claim for the aforesaid sum made payable as follows: $2000 to Home Insurance Company and Louis E. Lauerman; $2500 to Louis E. Lauerman and Gladys Lauerman, individually and as husband and wife, and Harry J. Sterling, their attorney; and $60,500 to Louis E. Lauerman and Gladys Lauerman, individually and as husband and wife, and Harry J. Sterling, their attorney.
In addition to this settlement of $65,000, Ryder and National Union have been caused to expend adjusting costs of Seven Hundred Forty-Two and 30/100 Dollars ($742.30) for a total settlement expense of Sixty-Five Thousand Seven Hundred Forty-Two and 30/100 Dollars ($65,742.30) as a result of the collision and resulting claims.
*669 The issues in the present action are whether U.S.F.&G. is obligated to pay a share of the settlement expense under its insurance agreement with Appalachian, and if so, what that share should be.

COVERAGE UNDER THE U.S.F.&G. POLICY
In an Order and Memorandum dated July 13, 1981 this Court found that Ryder's policy with National Union provided primary coverage of the tractor and excess coverage of the trailer, and that Appalachian's policy with U.S.F.&G. provided primary coverage of the trailer. The U.S.F.&G. policy makes clear that it also provides excess coverage of the tractor. Coverage under the policies can thus be summarized as follows:

 Tractor Trailer
 ------------------------
National Union | Primary | Excess |
----------------|-----------|------------|
U.S.F.&G. | Excess | Primary |
-----------------------------------------

U.S.F.&G. argues that under the policy issued by it to Appalachian, it is not liable for settlement expenses unless Appalachian's trailer was directly involved in the collision, and then, only if National Union's primary coverage is insufficient to cover those expenses.
As a preliminary matter, this Court finds that there was no physical contact between the trailer and the Lauerman vehicle. The only evidence which suggests that the trailer may have made contact with the automobile consists of statements made by Marri Cuniff, a witness to the collision. In a voluntary statement made by Mrs. Cuniff to the police, she said that the truck driven by Mr. Poe struck Mr. Lauerman's vehicle "somewhere between the cab and the trailer of the truck and on the driver's door area of the car." In a statement made to an insurance adjuster, Mrs. Cuniff reaffirmed this position, but added that she was not sure. Mrs. Cuniff was three to four car lengths behind Mr. Lauerman's vehicle at the time the collision occurred, a less than perfect vantage point. By contrast, both the police report and the statements made by Mr. Poe to the police and the insurance adjuster make clear that the tractor alone came into contact with Mr. Lauerman's automobile. The preponderance of the evidence thus shows that the trailer did not, in fact, strike the Lauerman vehicle.
That the trailer did not make physical contact with Mr. Lauerman's automobile is not sufficient to relieve U.S.F.&G. from liability under its insurance policy with Appalachian. That policy covered accidents "arising out of the ownership, maintenance, or use" of the insured trailer. The words "arising out of" when used in such a provision are of broader significance than the words "caused by", and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle. 6B Appleman, Insurance Law and Practice § 4317 at 360-363 (Buckley ed. 1979). Therefore, the coverage of a policy for liability and damages "arising out of the use of" a vehicle may be effective even though there is no actual physical contact between the vehicle and the persons or property harmed. 12 Couch on Insurance § 45:58 at 149 (2d ed. 1964).
As defendant points out, for an injury to come within the meaning of the phrase "arising out of the ownership, maintenance, or use" of a vehicle, a causal relationship must exist between the accident or injury and the ownership, maintenance, or use of that vehicle. 89 A.L.R.2d 150, 153 (1963). Nevertheless, a direct, proximate causal relation is not required. 12 Couch on Insurance § 45:56 at 146-147.
Given this, virtually every jurisdiction which has addressed the question has held that an accident involving a tractor-trailer unit "arises out of" the use of both, regardless of which part of the unit was actually involved in the accident. See, e.g., Blue Bird Body Co. v. Ryder Truck Rental, 583 F.2d 717, 726 (5th Cir. 1978); Insurance Company of North America v. Royal Indemnity Company, 429 F.2d 1014, 1017-1018 (6th Cir. 1970); Hartford Accident and Indemnity Company, Inc. v. Liberty Mutual Insurance Co., 277 So.2d 775, 776 (Fla.1973); State Automobile Mutual Insurance Co. v. State Farm Mutual Automobile Insurance *670 Co., 456 F.2d 238, 240 (6th Cir. 1972); American Fire and Casualty Co. v. Allstate Ins. Co., 214 F.2d 523, 524-525 (4th Cir. 1954); Eastern Transp. Co. v. Liberty Mutual Cas. Co., 144 A.2d 911 (N.H.1958).
The theory seems to be that a trailer is of no use without a tractor, and vice versa. Hartford Accident and Indemnity Company, Inc. v. Liberty Mutual Insurance Co., supra at 776. But for the need to haul the trailer, the tractor would not have traveled the highway and been involved in the accident. In this respect, the accident did "arise from" the use of the trailer, and the requisite causality is present. U.S.F.&G. is therefore liable for a share of the settlement expense incurred as a result of the November 22, 1978 collision.

APPLICATION OF U.S.F.&G.'S COVERAGE
Both the National Union and the U.S. F.&G. policies contain identical "conditions" relating to "Other Insurance" which read as follows:
"When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than stated in the applicable contribution provision below:
(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.
(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."
Because both policies furnish primary coverage, subdivision (a) applies, and each insurer must contribute toward the settlement expenses in equal shares until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid. See Blue Bird Body Co. v. Ryder Truck Rental, supra at 727; McDaniels v. Great Atlantic & Pac. Tea Co., 602 F.2d 78, 83 (5th Cir. 1979); Commercial U. Assur. v. Aetna Cas. & Sur. Co., 455 F.Supp. 1190, 1194-1195 (D.N.H.1978).
National Union's policy limit is Five Hundred Thousand Dollars ($500,000) based on Ryder's rental contract and endorsement 7 of the policy. U.S.F.&G.'s policy limit is Two Hundred Fifty Thousand Dollars ($250,000). The total settlement expense is Sixty-Five Thousand Seven Hundred Forty-Two and 30/100 Dollars ($65,742.30), which is well below the lowest applicable limit of liability of $250,000 under the U.S.F.&G. policy. Accordingly, each insurer is liable for an equal (50%) share of the total settlement expense. In as much as Ryder and National Union have already paid the full settlement expense, U.S.F.&G. must pay them one-half of that expense, which is Thirty-Two Thousand Eight Hundred Seventy-One and 15/100 Dollars ($32,871.15).
National Union and Ryder are also seeking interest on the amounts owed to them by U.S.F.&G. under its insurance policy. The parties disagree as to what state's law governs the rate of interest to be paid. In determining the applicable law, this Court is bound to follow the choice of law rules of Missouri. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The question of prejudgment interest under an insurance policy is one sounding in contract. Missouri *671 has adopted the "most significant contacts" approach of the Restatement (Second) of Conflicts for resolving choice of law issues in contracts cases. Havenfield Corporation v. H & R Block, 509 F.2d 1263 (8th Cir. 1975). This Court finds that under Sections 193 and 188 of the Restatement (Second) of Conflicts, West Virginia law would apply to the U.S.F.&G. policy with Appalachian. From the record, Appalachian appears to be a West Virginia corporation with its principal place of business in West Virginia. The insurance policy was purchased in West Virginia through a West Virginian agent of U.S.F.&G., Smith-Hetzel Co., Inc.
Neither party has offered proof of the rate of interest allowed under West Virginia law. Defendant has argued only that Illinois law applies and has set forth only the statutory rates of interest allowed in Illinois. However, Illinois interest rates are immaterial to a West Virginia insurance policy. The mere fact that the collision occurred in Illinois and the settlement was made there does not shift the "center of gravity" of this issue from West Virginia. Because no proof has been offered as to West Virginia law on interest rates, the amount of interest due is governed by the law of the forum, i.e., Missouri. Industrial Acceptance Corporation v. Webb, 287 S.W. 657 (Mo.App.1926).
U.S.F.&G.'s liability to Ryder and National Union accrued on June 12, 1979, when the "Stipulation to Dismiss" was accepted by the Circuit Court in Illinois and Mr. Lauerman's claims were settled. At that time, the applicable statutory rate of interest in Missouri was six per cent (6%) per annum. § 408.020, R.S.Mo., V.A.M.S.[1] Accordingly, U.S.F.&G. must pay interest to Ryder and National Union on its share of the settlement expenses, computed at the rate of six per cent (6%) per annum from June 12, 1979 up to, but not including, the date of this judgment.
U.S.F.&G. must also pay interest on the amount of this judgment to Ryder and National Union computed at the rate of nine per cent (9%) per annum from the date of this judgment until the date the judgment is satisfied. § 408.040, R.S.Mo., V.A.M.S.
NOTES
[1] Section 408.020 was amended, effective September 29, 1979, to increase the rate of interest to nine per cent (9%) per annum. However, that amendment may be applied prospectively only. See Mo.Const.Art. 1, § 13. Because liability here accrued prior to the effective date of the amendment, the lower rate of interest controls.