**HAGGARD HAULING & RIGGING CO., INC., Appellant,**

v.

**STONEWALL INSURANCE COMPANY, Respondent.**

No. WD 45938.

Missouri Court of Appeals, Western District.

April 27, 1993.

Norman E. Beal, Kansas City, for appellant.

Gary A. Schafersman, Niewald, Waldeck & Brown, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and SHANGLER and KENNEDY, JJ.

BRECKENRIDGE, Presiding Judge.

Haggard Hauling & Rigging Co., Inc. appeals from the trial court's order granting Stonewall Insurance Company's motion for summary judgment.

Haggard raises five points on appeal alleging that the trial court erred in granting Stonewall summary judgment because: (1) genuine issues of material fact existed; (2) the policy provided coverage for Haggard's defense of a lawsuit and the amount Haggard paid to settle the lawsuit; (3) Endorsement No. 3 (the Following Form Endorsement) did not preclude coverage by converting the policy to a pure excess policy; (4) the policy included coverage for loss of business revenues in its coverage for loss of use; and (5) the policy was ambiguous and should have been construed in the light most favorable to the insured.

The judgment is affirmed.

Haggard purchased an umbrella liability insurance policy from Stonewall which covered occurrences during the period of March 1, 1984 to March 1, 1985. Haggard was required to maintain certain underlying insurance in accordance with the Schedule of Underlying Insurance. Haggard maintained a cargo liability policy and a general liability policy during the term of the Stonewall policy.

On or about August 14, 1984, Haggard was moving a five-color printing press owned by Harmony Printing Company and damaged it. Harmony demanded remuneration for damage to the printing press and for business Harmony lost due to its inability to use the damaged press. Haggard's cargo liability carrier provided coverage for the physical damage to the press and settled that portion of Harmony's claim. Although the cargo liability policy covered actual physical damage to the press, it did not cover loss of business revenues. Harmony filed suit against Haggard to recover for the loss of business revenues. Harmony sought to recover $93,081. Haggard's general liability insurance policy did not cover Harmony's loss of business revenues because such policy only covered property damage that occurred "on premises owned or rented" by Haggard.

Haggard tendered the defense of the lawsuit to Stonewall and requested that Stonewall indemnify Haggard under the terms of the umbrella liability policy. In a letter dated September 3, 1987, Stonewall declined defense of the action. Pursuant to Stonewall's decision, Haggard retained defense counsel and a settlement was negotiated. Haggard filed this case to recover the amount it was forced to expend in the defense and settlement of the Harmony lawsuit.

Stonewall filed its motion for summary judgment. Haggard did not file a cross-motion for summary judgment. The trial court granted Stonewall's motion for summary judgment and Haggard appeals from that order.

When reviewing the trial court's ruling on a motion for summary judgment, an appellate court must examine the record in

the light most favorable to the non-moving party and grant that party all reasonable inferences which may be drawn from the evidence. *Maryland Cas. Co. v. Martinez,* 812 S.W.2d 876, 879 (Mo.App.1991). This court must affirm the trial court's judgment if it can be sustained under any theory. *Ernst v. Ford Motor Co.,* 813 S.W.2d 910, 915 (Mo.App.1991). Summary judgment is appropriate when the prevailing party has shown that he or she is entitled to judgment as a matter of law and there is no genuine dispute of the material facts required to support that right to judgment. *Martinez,* 812 S.W.2d at 879. Summary judgment is appropriate when an insurance policy is clear and unambiguous. *Id.* at 880. The moving party bears the burden of proving a right to judgment as a matter of law and the absence of a genuine dispute about the material facts supporting such judgment. Rule 74.04(c). It is no longer necessary for the moving party to show entitlement to summary judgment by unassailable proof. *Herron v. Whiteside,* 782 S.W.2d 414, 415 (Mo.App.1989).

Although Haggard sets forth five Points Relied On prior to the argument portion of its brief, Haggard does not organize its argument accordingly. In its argument, Haggard raises one Point Relied On and four subpoints identified with letters. In response to Haggard's arguments, Stonewall devised its own Points Relied On system. To avoid confusion, this court will address the arguments without identifying them according to Points Relied On.

The trial court sustained Stonewall's motion for summary judgment, finding that Endorsement No. 3 of the umbrella insurance policy precluded coverage for Haggard's loss. Haggard argues that the court erred because the plain language of the policy provided coverage and a right to defense for Haggard and Endorsement No. 3 does not negate coverage. Endorsement No. 3 reads as follows:

In consideration of the premium charged, it is agreed that unless coverage is provided by the underlying insurance at the full limits of liability as shown on the schedule of underlying insurance and not otherwise specifical-

ly excluded by endorsement hereon, this policy shall not apply to:

2. Property damage, as defined in insuring agreement II. C.

3. Liability assumed by the insured under any contract or agreement.

The two provisions Haggard relies on as providing coverage for its loss are the "Conditions" section and the Defense Coverage Endorsement. The applicable portion of the "Conditions" section of the policy reads as follows:

5. Limits of Liability

A. The company shall only be liable for ultimate net loss in excess of either: (i) the applicable limits of liability of the policies of underlying insurance set forth in the Schedule of Underlying Insurance; or

(ii) *as respects an occurrence not covered by such underlying insurance, but covered under this policy;* or where an occurrence covered by such underlying insurance but in recoverable amounts less than the self insured retention set forth in Item 3(c) of the Declarations, the amount of ultimate net loss set forth in Item 3(c) of the Declarations as "Self Insured Retention."

(emphasis added).

The pertinent part of the Defense Coverage Endorsement reads as follows:

It is agreed that the policy to which this endorsement is attached is amended to include the following additional insuring agreement:

Defense, settlement, supplementary payments.

*As respects occurrences covered under this policy, but not covered under the underlying insurance* or under any other collectible insurance, the company shall:

(a) Defend in his name and behalf any suit against the insured alleging liability insured under the provisions of this policy and seeking damages on account thereof: Even if such suit is groundless, false or fraudulent; but the company shall have the right to make such

investigation and negotiation and settlement of any claim or suit as may be deemed expedient by the company.... (emphasis added).

When construing an insurance policy, the court must apply general contract construction rules because insurance policies are contracts. *Herpel v. Farmers Ins. Co., Inc.*, 795 S.W.2d 508, 510 (Mo. App.1990). A policy is only subject to being construed under contractual rules of construction if it is ambiguous. *American Family Mut. Ins. Co. v. Ward*, 789 S.W.2d 791, 795 (Mo. banc 1990). Whether or not the language of an insurance contract is ambiguous is a question of law. *West v. Jacobs*, 790 S.W.2d 475, 480 (Mo.App.1990). When a contract is unambiguous, it is the trial court's responsibility to state its meaning. *Id.* An insurance policy that is unambiguous will be enforced as written and does not require application of the rules of construction. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). An ambiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of the language used in the policy. *Id.* If the language of the policy is ambiguous and reasonably open to different constructions then the language will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy. *Id.* Ambiguous provisions of an insurance policy will be construed against the insurer. *Id.*

Haggard first asserts that the policy is not ambiguous. It argues that the policy provides primary coverage for the loss claimed by Harmony and that Endorsement No. 3 does not convert the policy to an excess policy.[1] Haggard interprets the "Conditions" section of the policy and the Defense Coverage Endorsement as providing coverage for occurrences not covered by the underlying insurance. Haggard relies on the phrase "as respects occurrences covered under this policy, but not covered under the underlying insurance" as an expression of intent to provide coverage for occurrences not covered by the underlying insurance. Haggard claims that the plain meaning of this language is that the policy contemplates primary coverage for occurrences rather than only providing excess coverage.

Words or phrases in an insurance contract must be interpreted by the court in the context of the policy as a whole and are not to be considered in isolation. *First Nat. Bank v. Farmers New World Life Ins. Co.*, 455 S.W.2d 517, 523 (Mo.App. 1970). Although the language Haggard relies on supports its argument when viewed in isolation, if read in context, the meaning is otherwise. The "Conditions" section and the Defense Coverage Endorsement both include language stating that coverage is only afforded if it is provided under the Stonewall policy. Neither section is intended to bestow primary coverage not otherwise provided for in the policy.

Haggard then argues that Endorsement No. 3 only requires it to maintain the underlying insurance coverage set forth in the Schedule of Underlying Insurance, without requiring that the coverage of those policies be exhausted in order to receive coverage for the property damage at issue in this case. Haggard contends that the terms of the Schedule of Underlying Insurance and Endorsement No. 3 when read together provide that any policy which covers property damage is sufficient to satisfy the underlying insurance requirement. Such an interpretation would create coverage that does not exist. The plain meaning of the two provisions requires that, before the umbrella policy provides coverage for property damage, underlying insurance must be available to pay the full limits of liability required by the Schedule for Underlying Insurance. Therefore, the trial court properly concluded, as a matter of

---

1. Umbrella policies are utilized to provide excess coverage over and above any type of primary coverage. 8A Appleman, Insurance Law and Practice § 4909.85 (Rev. ed. 1981). Umbrella policies also often provide primary coverage for those areas not covered by any of the underlying policies. *Id.* The language of the policy is determinative of the coverage provided. *Id.* at § 7381.

law, that the policy required that the underlying insurance be exhausted before Stonewall was liable.

Haggard did maintain primary general liability coverage and cargo liability coverage which it claims met the requirements of the Schedule for Underlying Insurance. Both of the underlying policies, however, provided narrower coverage for property damage than the Stonewall policy, since not all occurrences involving property damage covered by the Stonewall policy were covered by Haggard's underlying insurance policies. Under Haggard's cargo liability policy, the definition of property damage did not include coverage for loss of use. Haggard's general liability insurance policy did not cover any property damage which occurred away from the premises owned or leased by Haggard. Haggard is not entitled to coverage under the Stonewall umbrella policy because the underlying insurance policies which it chose to maintain did not provide property damage coverage as required by the condition precedent under the Stonewall policy.

Haggard next argues that if its maintenance of underlying insurance did not satisfy the condition of Endorsement No. 3, the trial court still erred in granting Stonewall's motion for summary judgment because there were genuine disputes as to material facts essential to a judgment in favor of Stonewall. Haggard asserts that summary judgment could not be granted to Stonewall as a matter of law because the following genuine issues of material fact existed: 1) the expectations and intent of the parties as to coverage were in dispute; 2) the possibility for two different interpretations of Endorsement No. 3 created an ambiguity; and 3) Stonewall's interpretation of Endorsement No. 3 created a conflict with the policy's "Conditions" section and the Defense Coverage Endorsement which rendered the policy ambiguous.

■ Haggard first contends that the policy is ambiguous and should be construed in favor of the insured, because the expectations and intent of the parties as to coverage were in dispute. Extrinsic evidence of the expectations and intent of the parties as to coverage is only to be considered if the policy language is ambiguous. *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896, 901 (Mo. banc 1990). The Missouri Supreme Court in *Peterson* quoted, with approval, the following language from *Kalen v. Steele*, 341 S.W.2d 343, 346 (Mo. App.1960): "Where there is no ambiguity in the contract the intention of the parties is to be gathered from it and it alone, and it becomes the duty of the court and not the jury to state its clear meaning." *Peterson*, 783 S.W.2d at 901. Contrary to Haggard's argument, the parties' subjective intent cannot be used to create an ambiguity. Only if the policy is ambiguous, can a question of fact arise requiring extrinsic evidence of the parties' intentions when the policy was purchased. If the policy is not ambiguous, the intent of the parties must be ascertained by the court from the policy itself.

■ Haggard's second contention of ambiguity is based upon the fact that Stonewall and Haggard interpret Endorsement No. 3 differently, which Haggard asserts proves that the endorsement is open to two different interpretations. Haggard's contention is without merit. An insurance policy will not be rendered ambiguous by a dispute between the parties regarding interpretation of a policy provision. *Crim v. National Life and Acc. Ins. Co.*, 605 S.W.2d 73, 76 (Mo. banc 1980). Whether the policy is ambiguous is a question of law for the court, without regard to whether the parties disagree as to its meaning.

Haggard further claims that an ambiguity is created because the phrase "as respects occurrences covered under this policy, but not covered under the underlying insurance," contained in the "Conditions" section and the Defense Coverage Endorsement, conflicts with the language of Endorsement No. 3. Its argument is that the umbrella policy provides coverage in one place, i.e., the property damage definition and the Defense Coverage Endorsement, and takes it away in another place, i.e., Endorsement No. 3. Haggard cites *Maxon v. Farmers Insurance Co.*, 791 S.W.2d 437, 438 (Mo.App.1990), for the premise that if a

contract promises something in one place and takes it away in another then an ambiguity results.

 "[E]very clause in an insurance policy must be given some meaning if it is reasonably possible to do so, and ... conflicting provisions in insurance policies should be reconciled if it is possible to do so consistently with the intention of the parties as ascertained from the terms used." *Brugioni v. Maryland Casualty Company,* 382 S.W.2d 707, 712 (Mo.1964); *Surface v. Ranger Insurance Company,* 526 S.W.2d 44, 47 (Mo.App.1975). In the event of a possible ambiguity, seeming contradictions must be harmonized away if reasonably possible. *Ward v. Gregory,* 305 S.W.2d 499, 504 (Mo.App.1957). The rule requiring that an insurance policy be construed favorably to an insured in cases of ambiguity does not permit a strained interpretation of the language of the policy in order to create an ambiguity where none exists. *Id.*

The seeming contradiction of Endorsement No. 3 with the "Conditions" section and the Defense Coverage Endorsement is easily harmonized. The Stonewall policy provides coverage for property damage and for liability assumed by the insured under any contract or agreement, to which Endorsement No. 3 is applicable. The policy also provides liability coverage for personal injury and advertising liability. The language of the "Conditions" section of the policy and the Defense Coverage Endorsement is meaningful and does not conflict with Endorsement No. 3, because it is applicable to the liability coverage excepted from the conditions of Endorsement No. 3.

Haggard's argument to the contrary ignores the plain meaning of the policy and the endorsements. The court cannot distort the plain language of the policy to create an ambiguity in a policy that is unambiguous. *Krombach,* 827 S.W.2d at 210. Endorsement No. 3 is not ambiguous and does not conflict with the Defense Coverage Endorsement or with the "Conditions" section of the policy, because it is possible for all three provisions to have independent application.

Haggard's brief also includes an argument that Harmony's claim for loss of business revenues is actually a claim for loss of use which the Stonewall policy definition of property damage includes. It is unnecessary for this court to decide whether loss of business revenues is included in the definition of property damage under loss of use. Regardless of the definition, the Stonewall policy does not cover loss-of-use damages because the underlying policies did not cover the property damage at issue.

 Haggard finally contends that the Defense Coverage Endorsement provides that Stonewall will defend Haggard in those instances where there is no underlying insurance coverage. Haggard's argument regarding Stonewall's responsibility to defend is without merit. In instances where there is no underlying insurance, the Defense Coverage Endorsement requires that the occurrence be otherwise covered under the policy in order to require Stonewall to defend the action.

Haggard claims that under Missouri law, even if there is only the potential for coverage, Stonewall has a duty to defend the suit. Haggard bases its argument on *Missouri Terrazzo Co. v. Iowa National Mutual Insurance Co.,* 740 F.2d 647, 652 (8th Cir.1984) which says that an insurer, under Missouri law, has a broader duty to defend than to indemnify. The court in *Missouri Terrazzo Co.* stated that an insurer must defend when a comparison of the policy language and the allegations of the complaint "state a claim which is potentially or arguably within the policy's coverage." *Id.* Harmony's loss-of-use damages are not "potentially or arguably" within the coverage of the policy because such damages are excluded by Endorsement No. 3. Endorsement No. 3 specifically excludes liability for property damage not covered by the underlying insurance. Harmony's claim for loss-of-use damages against Haggard is not covered by the policy and, therefore, Stonewall was not required to defend the suit.

Stonewall met its burden of proving that it was entitled to judgment as a matter of law and that there are no genuine disputes

of material facts essential to support the right to judgment. The policy is not ambiguous and summary judgment in favor of Stonewall is appropriate because Haggard failed to comply with a condition of coverage as set forth in Endorsement No. 3.

The judgment is affirmed.

All concur.