_____

No. 96-1702

_____

St. Paul Fire and Marine          *
Insurance Company,                *
                                  *
          Appellee,               *
                                  *   Appeal from the United States
     v.                           *   District Court for the
                                  *   Eastern District of Missouri.
Missouri United School            *
Insurance Council,                *
                                  *
          Appellant,              *
                                  *
Pacific Employers Insurance       *
Company, formerly known as        *
Cigna Insurance Company,          *
                                  *
          Defendant.              *

_____

          Submitted:  September 11, 1996

              Filed:  October 8, 1996

_____

Before MAGILL, FLOYD R. GIBSON, and LAY, Circuit Judges.

_____

MAGILL, Circuit Judge.

     St. Paul Fire and Marine Insurance Company (St. Paul) and Missouri
United School Insurance Council (MUSIC) insured the Parkway School District
(Parkway) in St. Louis, Missouri.  Parents of disabled children brought
suit against Parkway for allegedly violating their children's rights to
special education services and a nondiscriminatory education.  St. Paul
expended $644,000 in settling the suit and reimbursing Parkway for its
defense, and now

seeks contribution from MUSIC for these costs. The district court[1] tried the case on stipulated facts and concluded that, under MUSIC's "claims-made" policy with Parkway, MUSIC was liable for half of the settlement and defense costs. The district court issued a judgment against MUSIC for $322,000. We affirm.

## I.

The facts of this case are not in dispute. In May of 1986, the Merrys, parents of a disabled student at Parkway, first complained to the school district about the treatment of their son. On June 15, 1988, the Merrys requested a due process hearing with the school, which took place in July 1988. Dissatisfied with the results of the hearing, the Merrys filed a lawsuit against the school district on November 17, 1988. Other parents joined the suit, which alleged unequal treatment of disabled children, discrimination, deprivation of due process, and failure to provide special education needs. The suit was later certified as a class action. Although the suit generally sought injunctive relief, paragraph 20 of the requested relief section of the second amended complaint specifically requested "appropriate compensatory relief to members of the plaintiff class who have been required to expend their own funds because they were denied special education and related services by defendants' practices that violate federal law." Appellant's App. at 50. The suit was settled before trial, and St. Paul covered the cost of the settlement and the school district's legal fees.

MUSIC began insuring the school district on July 1, 1988, and provided coverage to the school district for the duration of 1988 pursuant to MUSIC's 1988 coverage outline. The 1988 coverage outline included a section on "Errors and Omissions Liability."

---

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

<u>See</u> Appellant's App. at 164. Under "Conditions of Coverage," this section provided:

> "Claims-Made Form"
> Covers Claims from Third Parties against an insured under the program for alleged errors or omissions causing a monetary loss to that third party
>           Defense Costs Included

<u>Id.</u> Under "Examples of Losses," the section includes "Improper Board Action, Failure to give a Proper Education, Discrimination, etc." <u>Id.</u>

St. Paul brought the instant action against MUSIC and another insurance provider for Parkway for contribution for the settlement and defense costs.[2] The district court held MUSIC liable for half of St. Paul's expenditures on behalf of Parkway. After concluding that "M.U.S.I.C.'s 1988 coverage is not ambiguous," Mem. Op. at 7, the district court held that

> because the Merrys made their claim against the Parkway School District in November 1988, and M.U.S.I.C.'s 1988 coverage became effective on July 1, 1988, M.U.S.I.C. is liable to St. Paul Fire and Marine Insurance Company for coverage for its share of the settlement amount in the underlying <u>Merry</u> suit. The claim was made during 1988, making the 1988 coverage outline the governing document, so Defendant M.U.S.I.C. is liable for the underlying claim amount and for attorney's fees.

<u>Id.</u> at 8.

MUSIC now appeals, arguing that the district court erred in (1) interpreting the claims-made provision of MUSIC's policy with the school district; (2) allowing recovery because the action against Parkway was for injunctive relief, and MUSIC's policy only

---

[2]The district court concluded that the other defendant in this action was not liable to St. Paul. This ruling is not before us.

covered suits for monetary damages; and (3) holding MUSIC liable for a portion of the school district's defense costs.

## II.

The substantive law of Missouri controls this diversity action.  See Langley v. Allstate Ins. Co., 995 F.2d 841, 844 (8th Cir. 1993) ("[W]hen federal courts are exercising diversity jurisdiction, the rules for construing insurance policies are controlled by state law.").  This Court reviews de novo the district court's interpretation of Missouri law.  See Empire Bank v. Fidelity & Deposit Co. of Md., 27 F.3d 333, 335 (8th Cir. 1994).  We also review the district court's interpretation of the insurance contract's terms de novo.  See GRE Ins. Group v. Metropolitan Boston Hous. Partnership, Inc., 61 F.3d 79, 81 (1st Cir. 1995); Principal Health Care of La., Inc. v. Lewis Agency, Inc., 38 F.3d 240, 242 (5th Cir. 1994).

Under Missouri law, we must construe an insurance contract in favor of the insured, so long as that construction is reasonable.  West v. Jacobs, 790 S.W.2d 475, 477 (Mo. App. 1990).  We must, however, "accept the written policy as the expression of the agreement made by the parties, and give effect to the intentions of the parties as disclosed by clear and unambiguous language."  Childers v. State Farm Fire & Casualty Co., 799 S.W.2d 138, 140 (Mo. App. 1990).  See also Haggard Hauling & Rigging Co. v. Stonewall Ins. Co., 852 S.W.2d 396, 399 (Mo. App. 1993) ("An insurance policy that is unambiguous will be enforced as written . . . .").  Ambiguity in an insurance contract "exists when there is duplicity, indistinctness or uncertainty in the meaning of the language used in the policy."  Haggard Hauling, 852 S.W.2d at 399.  See also Southern Gen. Ins. Co. v. Web Assocs./Elecs., Inc., 879 S.W.2d 780, 782 (Mo. App. 1994) ("The language of a contract is ambiguous when there is uncertainty as to its meaning, and it is fairly susceptible of multiple interpretations.").  An ambiguous

policy "will be interpreted in the manner that would ordinarily be understood by the lay person who bought and paid for the policy."  Haggard Hauling, 852 S.W.2d at 399.  See also Missouri Property and Casualty Ins. Guar. Ass'n v. Petrolite Corp., 918 S.W.2d 869, 872 (Mo. App. 1996) ("If an insurance policy is open to different constructions the one most favorable to the insured must be adopted."); Universal Underwriters Ins. Co. v. Dean Johnson Ford, Inc., 905 S.W.2d 529, 533 (Mo. App. 1995) ("[I]f the language [of an insurance policy] is ambiguous, it will be construed against the insurance company.").  Whether the language of an insurance contract is ambiguous is a question of law.  Haggard Hauling, 852 S.W.2d at 399.

A claims-made insurance policy generally "covers negligent or omitted acts discovered and brought to the attention of the insurer during the policy period, regardless of when the act or omission occurred."  Universal Underwriters, 905 S.W.2d at 535 n.2.  See also Continental Casualty Co. v. Maxwell, 799 S.W.2d 882, 886 (Mo. App. 1990) ("The claims made policy is triggered by the presentation of a claim.").  Because some of the parents involved in the class action against Parkway sought administrative relief prior to the initiation of the coverage under MUSIC's policy, the principle issue in this case is whether a claim is "discovered" upon the formal filing of a lawsuit or, as MUSIC argues, when parents first complained to Parkway of the treatment of their children.

In Katz Drug Co. v. Commercial Standard Ins. Co., 647 S.W.2d 831 (Mo. App. 1983), the Missouri Court of Appeals considered a notice provision in an insurance policy which provided that, "[i]f claim is made or a suit is brought against the Insured, the Insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."  Id. at 835.  The court stated that:

The parties disagree only as to whether the policy equates a claim with a suit, requiring that absent a filing of a lawsuit, no claim has been filed. We hold that in this context, a claim and a suit are not equal.

First, both paragraph thirteen and the endorsement distinguish between a claim and a suit by using both terms. If the terms were equivalent, the wording would be redundant.

Id. The Katz court noted that this interpretation favored the insured, and would apply even if the provision was ambiguous. See id.:

Here, the term "claim" can be considered either a demand for some asserted right (as argued by plaintiffs) or an actual lawsuit (as argued by defendant). Assuming arguendo that either of these interpretations is reasonable, we apply the meaning most favorable to [the insured], and determine that "claim" . . . must include any demand made upon [the insured] as a result of the company's negligent acts, errors or omissions . . . and cannot be restricted to lawsuits alone.

(emphasis in original).

Applying the principles of Katz to the facts of the instant case, we believe that, in this context, a claim and a suit are equal. Unlike the policy in Katz, MUSIC's 1988 coverage outline describes only a "claim." The 1988 coverage outline does not mention "suits," and does not otherwise distinguish between a suit and a claim. Without this distinction, it is unclear whether under MUSIC's 1988 coverage outline a phone call from an irate parent constitutes a "claim," or if a claim arises only when a lawsuit is filed against the insured. Based on the language of the policy, we cannot say that one interpretation is more necessary or likely than the other. This uncertainty regarding when coverage would apply

constitutes an ambiguity in the policy.[3]  We must therefore disagree with
the district court--although we arrive at the same ultimate conclusion that
MUSIC is liable under its policy--and hold that this element of the 1988
coverage outline is ambiguous.

Because of ambiguity in MUSIC's 1988 coverage outline, we must
construe the claims-made provision in favor of Parkway.  Under this
construction, we conclude that the claim against Parkway was not made until
the lawsuit was filed in November 1988.  Because MUSIC's coverage of
Parkway began in July 1988 and included the November 1988 filing of the
lawsuit, MUSIC is liable for contribution to St. Paul for the settlement
and defense of the claim.[4]

---

[3]In its 1989 coverage outline, MUSIC added an explicit
definition of claim to mean:

> (1) Any written or oral notice from any party to the
> [Insured] or a covered person that it is the intention
> of such party to hold them responsible for a specified
> Wrongful Act . . . or

> (2) Any occurrence which the [insured] or a covered
> person shall become aware of which may subsequently
> give rise to a claim being made in respect to any
> alleged Wrongful Act.

Appellant's App. at 196.  While MUSIC's clarification of
ambiguous language in its policies will undoubtedly be of help to
it in the future, we must reject MUSIC's invitation to use this
ex post facto definition to assist us in our interpretation of
its 1988 coverage outline.

[4]MUSIC argues that we should follow Edinburg Consol. I.S.D.
v. INA, 806 S.W.2d 910 (Tex. App. 1991), a Texas appellate case
which relied on dictionary definitions to determine that a claim
for a claims-made policy included an administrative hearing.  Id.
at 913.  The Edinburg decision is, of course, not binding in this
litigation, and we reject that court's reasoning.  We do not
believe that "claim" is self-defining and necessarily
incorporates any request for assistance; indeed, under the
definitions provided by the Edinburg court, "claim" is at least
as reasonably interpreted as referring to the filing of a formal
lawsuit as an informal complaint.  See id. (defining "claim" as a
"challenge of something, as a matter of right; a Demand for money

MUSIC's remaining claims are meritless. MUSIC asserts that, because it was not liable for the underlying claim, it could not have been liable for the school district's defense of the claim. MUSIC specifically agreed to cover costs of defense, however, so a finding as to liability for the settlement is controlling on this issue. Similarly, MUSIC's argument that the class action lawsuit was only for injunctive relief and therefore not covered by the policy ignores the terms of the lawsuit, which specifically sought compensatory damages.

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

or property; a demand for something rightfully or allegedly due; assertion of
one's right to something" (citations and quotations omitted)).