29 F.Supp.2d 1079 (1998)
COLONY INSURANCE COMPANY, Plaintiff,
v.
PINEWOODS ENTERPRISES, INC., et al., Defendants.
No. 4:96CV202 RWS.
United States District Court, E.D. Missouri, Eastern Division.
August 5, 1998.
*1080 Daniel T. Rabbitt, Rabbitt and Pitzer, St. Louis, MO, for Pinewoods Enterprises, Inc.
John D. Warner, Jr., Partner, Kortenhof and Ely, St. Louis, MO, for Colony Insurance Company.
Scott E. Stewart, Stewart and Dechant Co., L.P., Cleveland, OH, for Billy Dunlap.
Gerre S. Langton, Partner, Sam P. Rynearson, Partner, Adrian P. Sulser, Evans and Dixon, St. Louis, MO, for United States Fidelity & Guaranty Company.
Jack B. Spooner, Wittner and Poger, Clayton, MO, for James F. Payne, Jr.
R. Andrew Beeny, Clayton, MO, Burton A. Kalniz, Kalniz and Iorio, Toledo, OH, for Chad Parritt.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
This matter is before the Court on Defendant United States Fidelity & Guaranty Company's ("USF & G") Amended Motion for Summary Judgment on Its Counterclaim Against Colony Insurance Company ("Colony"). The issue is whether the term "premises" as defined by the insurance policy issued by Colony included coverage for the damages arising from the collapse of a deck at a campground. The deck collapsed during a rainstorm injuring a number of people. Since Colony's insurance policy included liability coverage for the use of the deck by those injured, USF & G's motion for summary judgment against Colony will be granted.

Background
This case arose when a deck attached to a lodge at a campground collapsed and injured numerous individuals. The campground is owned by Pinewoods Enterprises, Inc. ("Pinewoods"). An individual, Doug Bledsoe d/b/a Crescent Moon Presents ("Bledsoe"), had leased parts of the campground, from 2 p.m. July 4, 1995 to 2 p.m. July 7, 1995, to be used as campsites for followers of the musical group the Grateful Dead and as an area for Bledsoe and his friends to sell their handmade artwork.[1] During this time period, Bledsoe charged thousands[2] of Grateful Dead followers an admission price for entry onto the campground.
During a rainstorm on the evening of July 6, 1995, a large number of Grateful Dead followers admitted to the campground entered the lodge area where they climbed on and under a deck attached to the lodge in order to obtain shelter from a storm. The deck collapsed injuring a number of the fans. Pinewoods and Bledsoe were named in lawsuits alleging failure to prevent the campground from becoming overcrowded; failure to adequately supervise and/or train individuals responsible for security and crowd control; and failure to limit the number of persons occupying the lodge's deck.[3]
The lease agreement between Pinewoods and Bledsoe required that Bledsoe defend and indemnify Pinewoods from personal or property damage occurring on the leased premises. In addition, the lease required Bledsoe to either obtain a liability insurance rider from Pinewoods's insurer (USF & G), or obtain his own liability insurance and name Pinewoods as an additional insured. Bledsoe had an existing liability policy with Colony. Bledsoe added Pinewoods as an additional insured onto the Colony policy. Both USF & G's and Colony's policies were in effect at the time of the accident.
On August 22, 1995, Pinewoods, as an additional insured under Bledsoe's policy, made demand upon Colony to defend and indemnify Pinewoods from the various lawsuits arising from the accident. Colony denied coverage. *1081 Pinewoods's insurer, USF & G, has defended Pinewoods in the various lawsuits.
Colony brought the present suit seeking a declaration that the lease did not include the lodge area and that therefore, Colony's policy does not provide coverage to Pinewoods as an additional insured. The Court dismissed Colony's First Amended Complaint for Declaratory Relief on April 2, 1997. In its order, the Court held that the lodge area was part of the premises leased to Bledsoe by Pinewoods.
The issue before the Court is USF & G's counterclaim which seeks a judgment declaring that: (1) Colony has a duty to defend and indemnify Pinewoods with respect to any liability arising out of the accident on July, 6, 1995; (2) USF & G is entitled to contribution by equal share from Colony in the amount of one half of the expenses and attorneys' fees already incurred by USF & G in defense of the lawsuits against Pinewoods arising out of the accident; (3) Colony has a continuing obligation to contribute one half of any future attorneys' fees and related legal expenses incurred in defense of Pinewoods arising out of the accident; and (4) USF & G is entitled to costs incurred in the present case.

Analysis
In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden to establish both the absence of a genuine issue of fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e).
In the present case, the facts that gave rise to the injuries suffered when the lodge's deck collapsed are not in dispute. Rather, the parties ask the Court to rule on whether the insurance contract between Colony and Bledsoe obligates Colony to provide coverage to Pinewoods, as an additional insured, for past, current, and future lawsuits related to the accident. The parties agree that this case can properly be disposed of through the Court's ruling on their opposing motions for summary judgment.[4] Upon review of the briefs and the record, the Court finds that there are no genuine issues of disputed facts and that USF & G is entitled to summary judgment.
State law controls the rules of construction of insurance contracts. St. Paul Fire and Marine Insurance Co. v. Missouri United School Insurance Council, 98 F.3d 343, 345 (8th Cir.1996). Colony asserts that Missouri law governs the construction of its policy with Bledsoe. Since USF & G does not challenge this assertion, the Court finds that Missouri law governs this issue. Under Missouri law, whether the language of an insurance contract is ambiguous is a question of law. Id. Ambiguity in an insurance contract exists when there is duplicity, indistinctness or uncertainty of the meaning of the language used in the policy. Id. The court must construe an ambiguous insurance contract in favor of the insured so long as that construction is reasonable. Id. However, the court must give effect to the intentions of the parties as disclosed by the clear and unambiguous language of the policy. Id.
Although the question of whether the lease between Pinewoods and Bledsoe included the lodge area at the campground has already been decided by the Court in its order of April 2, 1997, the Court will provide a brief discussion of the lease provisions in light of the disputed coverage of the Colony insurance policy.

The Bledsoe Lease
The lease between Pinewoods and Bledsoe provides the following:
The LESSEE [Bledsoe] shall have the exclusive use of the Pinewoods Park from 2:00 p.m. July 4, 1995 through 2:00 p.m. July 7, 1995 as and for a camp site for followers of a Grateful Dead tour and concert. *1082 The only exception being the areas of the permanent guests, revenue lakes and the Lodge area and any existing reservations taken by June 10, 1995 all of which are marked and identified on the Pinewoods Park Map, attached hereto and identified as Exhibit # 1.
5) LESSEE [Bledsoe], its customers, guests and invitees will share the Lodge area and facilities, i.e. store, gift shop, bait and tackle area, and snack bar with the fishermen and permanent guests and any campers reserved prior to June 10, 1995.
6) LESSEE [Bledsoe] will provide its own personnel at the entrance gate as depicted on Exhibit # 1, and security personnel; additionally, LESSEE [Bledsoe] shall provide portable toilets and dumpsters in the areas designated on Exhibit # 1.
8) LESSEE [Bledsoe] shall have a liability insurance rider to the policy of Pinewoods Enterprises, Inc. or provide its own insurance, naming LESSOR [Pinewoods] as an additional insured, subject to approval of Pinewoods Enterprises, Inc.; LESSEE [Bledsoe] shall defend and indemnify Pinewoods Enterprises, Inc. and save it harmless from and against personal or property damage by whomsoever caused to any person or property, occurring on the premises; that LESSEE [Bledsoe] shall provide LESSOR [Pinewoods] with proof of said insurance.
Colony asserts that the lease terms in the first paragraph above plainly state that Bledsoe did not lease the lodge area of the Pinewoods Park campgrounds. Colony makes this assertion based on the first quoted paragraph of the lease that excepts Bledsoe's exclusive use of the lodge area. Colony reasons that since the lodge area was not leased to Bledsoe, any liability arising from injuries incurred at the lodge was outside of the coverage provided to Pinewoods as an additional insured under Colony's policy. Colony's position fails to consider other terms of the lease.
The Court's memorandum and order of April 2, 1997 found that the lease granted Bledsoe exclusive use of parts of Pinewoods Park which did not include the lodge area. However, the lodge area was clearly leased to Bledsoe in paragraph five (5) of the lease. The lease simply designated that Bledsoe did not have exclusive use of the lodge area.
The present question is whether Colony's coverage of Pinewoods as an additional insured extends to the accident that occurred at the lodge on July 6, 1995. If so, then the Court is asked to determine how Colony and USF & G should share in the expense of Pinewoods's defense.

Colony's Insurance Agreement
The insuring agreement of the Commercial General Liability Policy issued by Colony to Bledsoe provides that:
We will pay those sums which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. ....
Endorsement # 2 to this agreement states that:
WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule [Pinewoods] but only with respect to liability arising out of your [Bledsoe's] operations or premises owned by or rented to you.
This endorsement clearly and unambiguously provides coverage to Pinewoods as an additional insured for any liability arising out of Bledsoe's operations or premises owned or rented to Bledsoe. Colony asserts that Pinewoods is not covered as an insured because the premises where the accident occurred (the lodge area) was not leased to Bledsoe, nor did the accident arise out of Bledsoe's operations at the campground.
The Court in its order of April 2, 1997 has already held that Bledsoe did in fact lease the lodge area. Colony challenges that ruling and contends that U.S. Fidelity & Guaranty v. Drazic, 877 S.W.2d 140 (Mo.Ct.App. 1994) supports the proposition that the lodge area was not part of the premises leased to *1083 Bledsoe. Consequently, Colony claims that coverage is not available to Pinewoods under the "premises ... rented to you" language of the endorsement.
Drazic, however, is not dispositive of this issue. In Drazic, an employee of a tenant fell in a parking area shared by the landlord and the tenant. The employee sued the landlord, the Drazics. The lease between the Drazics and the tenant called for the tenant to include the Drazics as additional insureds under the tenant's liability policy. The lease described the premises leased as "a designated portion of a commercial building known and numbered as 418 Manchester Road ... plus the area adjacent to the entrance of [the tenant's shop] for installation of their office." Drazic, 877 S.W.2d at 142. The lease did not specifically list the parking lot as part of the leased premises.
The tenant's liability insurance contract listed the Drazics as additional insureds "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below leased to the named insured [the tenant]...." Id. at 143. The premises specifically "designated below" in the policy was "418 Manchester Road." No mention was made in the policy of coverage for the adjacent parking lot. The Drazic court declined to extend coverage to the accident that occurred on the parking lot because the parking lot was not specifically "designated below" as part of the premises insured under the additional insured endorsement. Id. at 143.
The facts in the present case are very different than those in Drazic on two basis. First, the lease between Pinewoods and Bledsoe specifically (albeit not exclusively) leases the lodge area to Bledsoe. Second, the language of the Colony additional insured endorsement is far broader than the endorsement in Drazic. The Colony endorsement does not limit coverage to the "premises designated below" followed by a specific designation as used in Drazic. Instead the endorsement uses the more expansive language that coverage extends to the "premises owned by or rented to you." To ascertain the "premises ... rented to [Bledsoe]" the Court looks to the lease agreement which clearly designates the lodge area as part of the leased premises.
Consequently, the holding in Drazic is inapplicable to the present case. The Court affirms its earlier ruling that the lodge area is part of the premises leased to Bledsoe. As a result, Colony's additional insured endorsement extends coverage to Pinewoods for any liability arising out of the collapse of the lodge's deck because the lodge was part of the premises leased to Bledsoe.
In addition, Colony's additional insured endorsement extends coverage to Pinewoods based on "liability arising out of [Bledsoe's] operations" on the campgrounds. The insurance language "arising out of" has been interpreted by Missouri courts to be a very broad, general and comprehensive phrase to mean "originating from" or "having its origins in" or "growing out of" or "flowing from." See Martin v. Cameron Mutual Insurance Co., 763 S.W.2d 710, 711 (Mo.Ct. App.1989); Bituminous Casualty Corp. v. Aetna Life and Casualty Co., 599 S.W.2d 516, 518 (Mo.Ct.App.1980). See also Ryder Truck Rental, Inc. v. U.S. Fidelity & Guaranty Co., 527 F.Supp. 666, 669 (E.D.Mo.1981) (general discussion of the meaning of "arising out of" language in insurance policy).
The phrase "arising out of" is more expansive than the words "caused by" used in some policies. When the former phrase is used in a liability policy, an unbroken chain of events need not be established but rather a simple casual relationship must exist between the accident or injury and the activity of the insured. The causation standard is not elevated to the strict "direct and proximate cause" standard of general tort law. Cf. Id. (all three cases discuss the phrase "arising out of the use of" in the automobile context but the reasoning is equally applicable to "arising out of the operations" language in the present case. See, e.g., Hormel Foods Corp. v. Northbrook Property and Casualty Insurance Co., 938 F.Supp. 555, 557 (D.Minn.1996)[5] (interpreting the phrase *1084 "arising out of the use of" in a premises liability insurance claim)).
Bledsoe's operations at the campground involved charging admission to Grateful Dead followers for the right to use the facilities of Pinewoods Park, including the lodge area. The injuries sustained in the collapse of the deck would not have occurred but for Bledsoe's activities of admitting the fans and allowing them to share in the use of the lodge per the lease agreement. As a consequence of the broad construction given to the phrase "arising out of" Bledsoe's operations, the Court finds that the injuries sustained in the accident arose from Bledsoe's operations.
Even if the phrase "arising out of [Bledsoe's] operations" in the Colony endorsement is deemed ambiguous, which it is not, the Court must construe the ambiguity in favor of the insured so long as that construction is reasonable. St. Paul Fire and Marine Insurance Co., 98 F.3d at 345. Often coverage issues are not black and white but rather are colored with a touch of grey. Accordingly, when push comes to shove over an ambiguity in a policy, the wheel of balance will tip in favor of coverage for the insured. The aforementioned cases clearly support the reasonable construction of "arising out of your operations" includes Bledsoe's activities in leasing and admitting people to Pinewoods Park.
Since the injuries suffered in the deck collapse on July 6, 1995 arose from Bledsoe's operations and/or from premises leased to Bledsoe, Colony is obligated to provide coverage to Pinewoods as an additional insured of the policy.

Allocating Coverage Between Colony and USF & G
Both Colony's and USF & G's policies contain identical "conditions" that pertain to "Other Insurance" which reads as follows:
If other valid and collectable insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
a. Primary Insurance
This insurance is primary except when b. below applies.[6] If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.
c. Method of Sharing
If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
Because both policies furnish primary coverage, subdivision "a." applies. This means that each insurer must contribute toward the past and future litigation and settlement expenses in equal shares until the each insurer has paid its applicable limit of insurance or none of the loss remains. See Ryder Truck Rental, Inc. v. U.S. Fidelity & Guaranty Co., 527 F.Supp. 666, 670 (E.D.Mo.1981).
As of the filing date of USF & G's Amended Motion for Summary Judgment (July 28, 1997), USF & G had expended Thirty-Five Thousand Eight Hundred Seventy-Six Dollars ($35,876) in defense of Pinewoods from suits concerning the collapse of the deck. Since each insurer is liable for an equal (50%) share, Colony must pay USF & G one-half of that expense, which is Seventeen Thousand Nine Hundred Thirty-Eight Dollars ($17,938).
In addition, Colony must pay one-half of litigation or settlement expenses incurred by USF & G, in connection with Pinewoods's defense stemming from the accident, from July 28, 1997 to date. Both insurers must contribute toward any future litigation and settlement expenses, on behalf of Pinewoods stemming from the accident, in equal shares until the each insurer has paid its applicable limit of insurance or none of the loss remains.
Accordingly,
*1085 IT IS HEREBY ORDERED that Defendant United States Fidelity & Guaranty Company's Amended Motion for Summary Judgment on Its Counterclaim Against Colony Insurance Company [253] is GRANTED.
IT IS FURTHER ORDERED that Colony will pay USF & G Seventeen Thousand Nine Hundred Thirty-Eight Dollars ($17,938) for defense expenses incurred through July 28, 1997.
IT IS FURTHER ORDERED that Colony must pay one-half of litigation or settlement expenses incurred by USF & G, in connection with Pinewoods's defense stemming from the accident, from July 28, 1997 to date.
IT IS FURTHER ORDERED that both Colony and USF & G must contribute toward any future litigation and settlement expenses, on behalf of Pinewoods stemming from the accident, in equal shares until the each insurer has paid its applicable limit of insurance or none of the loss remains.
NOTES
[1] Bledsoe's lease had a five year renewable option with Pinewoods to lease the campground for use by fans of the Grateful Dead when the band came to St. Louis.
[2] The exact number of fans admitted to the campgrounds was not given to the Court but the Bledsoe lease states that a minimum of two-thousand five-hundred people would attend in the days between the two scheduled Grateful Dead shows.
[3] For an example of the suits currently filed, see the petitions of Melissa Overby, Scott Dolman, Lawrence Isbister, and Linda Luffman, copies of which are attached to USF & G's amended motion for summary judgement.
[4] See the joint Motion to Amend the Case Management Order [doc # 246]. Colony's Motion for Summary Judgment has already been denied as moot.
[5] The Court cites a case applying Minnesota law based on Missouri courts' use of Minnesota decisions as persuasive authority in insurance cases. See, e.g., U.S. Fidelity & Guaranty v. Drazic, 877 S.W.2d 140 (Mo.Ct.App.1994).
[6] For brevity sake the Court notes that both policies contain the same language under "b." and it does not apply to the current case.