

*In the*

*Missouri Court of Appeals*

*Western District*

| | | |
|---|---|---|
| **CINDY WALDEN,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD75982** |
| | ) | |
| v. | ) | **OPINION FILED: April 15, 2014** |
| | ) | |
| **KENNETH SMITH AND AMERICAN** | ) | |
| **FAMILY MUTUAL INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable Anthony Rex Gabbert, Judge

Before Division One: Cynthia L. Martin, Presiding Judge, Mark D. Pfeiffer, Judge and
Karen King Mitchell, Judge

Cindy Walden ("Walden") appeals from the trial court's entry of summary judgment in favor of American Family Mutual Insurance Company ("American Family"). The trial court found that Walden's American Family automobile policies did not afford uninsured motorist coverage for injuries Walden sustained when a dog bit her through an open window of a vehicle because her injuries did not "arise out of the use" of the vehicle. We affirm.

## Factual and Procedural Background

On September 28, 2006, Walden, an employee at a bar and grill in Gladstone, Missouri, was walking to her place of employment. She saw Kenneth Smith's ("Smith") pick-up truck in the parking lot. Smith was sitting in the parked vehicle and had two pit bull terriers in the cab of his truck. Walden approached the truck and stood outside the driver's side door. One of Smith's dogs lunged through the open driver's side window and bit Walden on the upper lip. Smith did not have insurance. However, Walden had several automobile liability policies with American Family.

Walden filed suit against Smith and American Family. She claimed that Smith was negligent in that he failed to warn Walden of the harm posed by the dangerous propensities of the dog, failed to restrain or otherwise prevent the dog from biting her, and failed to restrict or otherwise prevent people from coming into contact with the dog. Walden's petition also sought a declaratory judgment that she was entitled to coverage under the uninsured motorist provision in her American Family policies.[1] Walden alleged that Smith was an uninsured motorist and "was engaged in the operation and use of his motor vehicle, was in the process of transporting his dog, and failed to contain said dog" resulting in Walden's injuries.

The American Family policies each provide:

PART III--UNINSURED MOTORIST COVERAGE

**We** will pay compensatory damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an

---

[1] Walden had three American Family automobile policies and sought to stack the uninsured motorist coverage available under each.

> **uninsured motor vehicle**. The **bodily injury** must be sustained by an **insured person** and must be caused by accident and arise out of the **use** of the **uninsured motor vehicle**.

(Emphasis in policies.) The policies do not define the phrase "arise out of." The policies define "use" as "ownership, maintenance, or use."

American Family filed a motion for summary judgment on the declaratory judgment action. American Family asserted as uncontroverted facts the facts set forth above. American Family argued that the uncontroverted facts established as a matter of law that Walden's injuries did not "arise out of the use" of Smith's uninsured vehicle and established only that Smith's vehicle was the "situs" of the injury.

Walden admitted all of the uncontroverted facts asserted in American Family's motion for summary judgment, and generally alleged that her injuries arose out of the use of Smith's vehicle. Walden did not identify any issues of fact in genuine dispute that prevented the entry of judgment on the issue of coverage. In fact, Walden filed her own motion for summary judgment which mirrored the uncontroverted facts from American Family's motion, and added only that her injuries "arose out of the use" of Smith's uninsured vehicle.[2] Walden argued that the uncontroverted facts established that Walden's injuries arose out of the use of Smith's uninsured vehicle as a matter of law because:

---

[2] Walden's assertion that her injuries arose out of Smith's use of his vehicle is not an assertion of fact, but is instead an assertion of Walden's opinion that her dog bite injuries were covered because they arose out of the use of Smith's uninsured vehicle. The resolution of that issue is a question of law. *Ward v. Int'l Indem. Co.*, 897 S.W.2d 627, 629 (Mo. App. E.D. 1995) (holding that where facts relating to how an injury occurred are not in dispute, the question of whether those facts support a finding that the injuries arose out of the use of a vehicle within the coverage provisions of a policy is "a question of law").

3

> Walden's injuries arose out of Smith's use of his automobile as a dog cage. But for Smith's use of his vehicle as a cage for his dogs, the dogs would not have been at the parking lot, and they would not have bitten Walden. Therefore, Walden's injuries arose out of Smith's use of his vehicle as a dog cage.

[L.F. p. 73; *see also* L.F. p. 88].

The parties thus agreed that the uncontroverted facts permitted the entry of judgment as a matter of law on the issue of coverage. They disagreed, however, about the legal effect of the uncontroverted facts.

On April 9, 2010, the trial court entered an order granting American Family's motion for summary judgment and denying Walden's motion for summary judgment.[3] After reciting the uncontroverted facts the trial court held that:

> [Walden] has not asserted any facts which establish any injury caused by the uninsured motorist's use of the uninsured motor vehicle itself. [Walden's] injury was caused by the dog bite. There are no facts which allege the motor vehicle was the instrumentality of the injury. There are no facts that assert that [Smith] was negligent in the inherent "use" of his vehicle. The automobile was not involved in the injury. [Walden] was not in the automobile at the time of the injury. There is nothing about [Smith's] use of the truck that caused the attack and nothing about [Smith's] use of the automobile which caused [Walden's] injury. The vehicle was not an active accessory to the injury and was not an essential or even significant element that lead [sic] to the injury. The allegations of negligence against [Smith] are totally independent from the "use" of the vehicle itself. The motor vehicle was the fortuitous location of the injury, not an integral part of the proximate cause of the injury.

> In this case, the uninsured motor vehicle simply provided the *situs* of the injury. Missouri law requires the vehicle be more than the "*situs*" of an injury to recover under these circumstances.

---

[3] After the competing motions for summary judgment were argued, but before they were ruled, the trial court permitted Walden to file a first amended petition which amended the negligence cause of action against Smith. The declaratory judgment claim asserted against American Family was not amended. The amended petition had no impact on the trial court's ability to resolve the legal issue of coverage framed by the parties' competing summary judgment motions.

. . . .

> . . . . [Walden's] injury did not arise out of the use of the uninsured motor vehicle. Accordingly, there is no coverage under the policies issues [sic] by [American Family].

On November 28, 2012, the trial court entered a judgment against Smith on Walden's negligence claim. The judgment incorporated the trial court's earlier order granting summary judgment in favor of American Family on the declaratory judgment claim.

Walden filed this timely appeal from the trial court's entry of judgment in favor of American Family.

## Standard of Review

The grant of summary judgment is a question of law we review *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Id.* Here, the parties agree that there are no issues of fact in genuine dispute. In fact, both parties relied on the same uncontroverted facts to urge the entry of judgment as a matter of law. All that is at issue are "differing opinions of the parties concerning the legal effect of" the uncontroverted facts on the question of coverage, a question of law, not fact, that does not preclude the grant of summary judgment. *Seymour v. Lakewood Hills Ass'n*, 927 S.W.2d 405, 407 (Mo. App. E.D. 1996).

5

In granting summary judgment, the trial court interpreted the phrase "arising out of the use" in American Family's policies. "The interpretation of an insurance policy is a question of law" that we review *de novo*. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). "Disputes arising from the interpretation and application of insurance contracts are matters of law for the court where there are no underlying facts in dispute." *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 107 (Mo. App. E.D. 2004); *see also Ward v. Int'l Indem. Co.*, 897 SW.2d 627, 629 (Mo. App. E.D. 1995) (holding that whether undisputed facts support a finding that injuries "arose out of the use" of a vehicle is a question of law).

## Analysis

The sole issue presented on appeal is whether the trial court erred in granting summary judgment by concluding as a matter of law that Walden's dog bite injuries were not covered under American Family's automobile policies because the injuries did not "arise out of the use" of an uninsured vehicle. Walden's point relied on argues that because Smith was using his uninsured motor vehicle as a "moving dog kennel,"[4] Walden's injuries arose out of Smith's "transportation and confinement of a dog within an uninsured motor vehicle."

No Missouri court has addressed whether injuries caused by a dog when it is being transported in a motor vehicle "arise out of the use" of the vehicle as to support coverage

---

[4] The manner in which Walden has described Smith's use of his vehicle has varied. In her petition, Walden alleges that Smith used his vehicle to "transport" his dogs. In her summary judgment pleadings, Walden alleges that Smith used his vehicle for "carriage and confinement" of his dogs, and as a "dog cage." In her point on appeal and during oral argument, Walden alleges that Smith used his vehicle as a "moving dog kennel." The varying nomenclature is immaterial. It is uncontroverted that Smith had his dogs in his vehicle with him when one of the dogs bit Walden. The issue is whether Walden's dog bite injuries arose out of this use of Smith's vehicle as to support coverage--a question of law. *Ward*, 897 S.W.2d at 629.

6

under an automobile liability policy. When interpreting language in an insurance policy, our courts generally begin by determining "whether the policy language is ambiguous or unambiguous." *Am. Family Mut. Ins. Co. v. Wemhoff*, 972 S.W.2d 402, 405 (Mo. App. W.D. 1998). However, that determination is not required where the policy language has already been judicially defined. *Id.* Missouri courts have judicially defined both "arising out of" and "use." The judicial definitions assigned to these policy terms are controlling, even though the factual circumstances presented here are a matter of first impression.

(i) *"Arising out of" requires a causal relationship but not proximate cause*

*Schmidt v. Utilities Insurance Co.*, 182 S.W.2d 181 (Mo. 1944) is the seminal Missouri case construing the phrase "arising out of" in an automobile liability policy. The omnibus clause[5] in the policy afforded coverage for bodily injuries "caused by accident and arising out of the ownership, maintenance, or use of the automobile." *Id.* at 183. The "bodily injury coverage" section of the policy defined "use" to "include[] loading and unloading" of the vehicle.[6] *Id.* at 182. The plaintiff was injured after tripping over wooden blocks left behind by truck drivers who had used the blocks as makeshift ramps to drive over a sidewalk to unload coal. *Id.* at 181-82. The question before the Court was whether the plaintiff's injuries "arose out of" use--specifically loading or unloading--of the truck.

---

[5] An "omnibus clause" is defined as "[a] provision in an automobile-insurance policy that extends coverage to all drivers operating the insured vehicle with the owner's permission." BLACK'S LAW DICTIONARY 1197 (9th ed. 2009).

[6] We address the significance of the policy's definition of "use" to include loading and unloading in greater detail, *infra*.

The insurer argued that the plaintiff's injuries did not "arise out of" unloading the truck. *Id*. at 183. Rather, according to the insurer, "the efficient, direct and proximate cause of the injury was the separate, independent, and intervening negligent acts of the truck drivers in placing the blocks on the sidewalk." *Id.* The insurer thus argued that "arising out of" requires proximate cause between an injury and the use of a vehicle.

Our Supreme Court disagreed. It noted that the "policy, by its terms, does not require a finding that the injury to [plaintiff] was directly and proximately caused by the use of the automobile." *Id*. Rather, "[t]he words of the policy are 'caused by accident and ***arising out of*** the use of the automobile.'" *Id*. (emphasis added). The Court observed:

> The words 'arising out of . . . use' are very broad, general and comprehensive terms. The insurer made no attempt to limit the plain, usual and ordinary meaning of the terms used. We find nothing in the policy requiring that the ownership, maintenance, or use of the automobile shall be the direct and 'efficient cause of the injuries sustained,' as appellant contends. The words used, we think, are much broader than the words 'caused by' . . . .

*Id.* The Court then held that the term "arising out of" should be afforded its plain and ordinarily understood meaning of "'originating from' or 'having its origin in,' 'growing out of' or 'flowing from.'" *Id.* at 184. *Schmidt* thus clearly held that "arising out of" requires proof of a causal connection, though the standard of causation is broader than "proximate cause." *Cameron Mut. Ins. Co. v. Ward*, 599 S.W.2d 13, 15 (Mo. App. W.D. 1980) (holding that although the use of a vehicle need not be the proximate cause of an injury, there nonetheless must be some "causal connection between an injury and the 'use' of an automobile in order for there to be coverage") (citing *Schmidt*, 182 S.W.2d at 183-84); *see also Pope v. Stolts*, 712 S.W.2d 434, 436-37 (Mo. App. E.D. 1986) ("Although it is

8

not required that the 'use' of the automobile be the direct and proximate cause of the injury in the strict legal sense of causation permeating general tort law, there must be some causal connection between an injury and the use in order for there to be recovery.").

The phrase "arising out of" has been similarly defined in other types of insurance policies. In *Colony Insurance Co. v. Pinewoods Enterprises, Inc.*, 29 F. Supp. 2d 1079 (E.D. Mo. 1998), the federal district court applied Missouri law to interpret the phrase "arising out of" in determining coverage in a premises liability case. The general liability policy provided coverage for "'liability arising out of [insured's] operations.'" *Id.* at 1083. The court observed that the "insurance language 'arising out of' has been interpreted by Missouri courts to be a very broad, general and comprehensive phrase to mean 'originating from' or 'having its origins in' or 'growing out of' or flowing from.'" *Id.* Consistent with *Schmidt*, the federal district court concluded that:

> The phrase "arising out of" is more expansive than the words "caused by" used in some policies. When the former phrase is used in a liability policy, an unbroken chain of events need not be established but rather a simple causal relationship must exist between the accident or injury and the [operations] of the insured.[7] The causation standard is not elevated to the strict "direct and proximate cause" standard of general tort law.

*Id.*

The same result was reached in *Capitol Indemnity Corp. v. 1405 Associates, Inc.*, 340 F.3d 547 (8th Cir. 2003), where coverage was sought under a commercial liability policy for claims of false imprisonment, wrongful termination, and slander. The insurer

---

[7] In contrast to *Schmidt*, where the causal connection had to be between the injury and the use of the vehicle (which the policy in *Schmidt* defined to be loading and unloading), the causal connection in *Colony Insurance* had to be between the injury and the operations of the insured. *Colony Insurance* observed that although it was relying on Missouri cases that interpreted the phrase "arising out of" in the "automobile context . . . the reasoning is equally applicable to the 'arising out of operations' language" it was interpreting. 29 F. Supp. 2d at 1083.

relied on an employment-related practices exclusion in the policy in an effort to defeat coverage. *Id.* at 550. The exclusion applied to "personal and advertising injury" to "a person arising out of" identified employment-related practices. *Id.* The Eighth Circuit observed that "under Missouri law, 'arising out of ' has been interpreted 'to be a very broad, general and comprehensive phrase' meaning 'originating from' or 'having its origins in' or 'growing out of' or 'flowing from.'" *Id.* (quoting *Colony Ins.*, 29 F. Supp. 2d at 1083). The court noted that the phrase imposes a causation standard, but that the "applicable causation standard is not the strict 'direct and proximate cause' standard applicable in general tort law." *Id.* (citing *Colony Ins.*, 29 F. Supp. 2d at 1083).

Missouri courts have also consistently interpreted the phrase "arising out of" when it has been used, but not defined, by the Missouri legislature.[8] One common example is in the workers' compensation arena. In *Tangblade v. Lear Corp.*, we observed that under the workers' compensation act, "an employee is entitled to workers' compensation benefits for personal injury or death 'by accident arising out of and in the course of his employment.'" 58 S.W.3d 662, 666 (Mo. App. W.D. 2001)[9] (quoting section 287.120.1). We held that "'[a]rising out of' means that a causal connection exists between the employee's duties and the injury." *Id.*

---

[8] Principles of statutory construction require Missouri courts to afford words used by the legislature their plain and ordinary meaning if possible. *Utility Serv. Co. v. Dept. of Labor & Indus. Relations*, 331 S.W.3d 654, 658 (Mo. banc 2011) ("Statutory analysis requires ascertaining the intent of the legislature, as expressed in the words of the statute. Statutory language is given its plain and ordinary meaning."). This is the same principle of construction used to determine the meaning of an undefined term in a contract, including an insurance policy. *Fire Ins. Exchange v. Horner*, 368 S.W.3d 214, 217 (Mo. App. W.D. 2012) ("When interpreting the language of an insurance policy, a court must give the language of the policy its plain meaning."). The principle of construction is influenced, however, by legislative guidance. In the case of the Worker's Compensation Act, a 2005 amendment now requires the language of the Act to be "strictly construed." Section 287.800.

[9] Overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003).

In summary, Missouri courts consistently define the phrase "arising out of" to require a causal relationship, described as "originating from" or "having its origins in" or "growing out of" or "flowing from" the object or circumstance referenced in the policy or statute. Here, the referenced object or circumstance is the "use" of a vehicle. We thus turn our attention to the judicial definition of "use" in automobile liability policies.

(ii) ***Unless "use" is otherwise defined by the policy, "use" refers broadly to the employment of a vehicle for some purpose or object of the user and includes any act that assumes the ability to exercise supervisory control or guidance over the vehicle's movement***

"Use" is defined in American Family's policies (and in many automobile policies) as "ownership, maintenance, or use." Defining "use" by reference to "use" has required our courts to determine the "uses" of a vehicle other than "ownership" and "maintenance" which will support coverage.[10] *State Farm Mut. Auto. Ins. Co. v. Whitehead*, 711 S.W.2d 198, 200 (Mo. App. S.D. 1986) ("'Use' is the general catch-all of the insuring clause, designed and construed to include all proper uses of the vehicle not falling within one of the previous terms of definition.") (internal quotation marks omitted).

In *Allstate Insurance Co. v. Hartford Accident & Indemnity Co*., the omnibus clause in an automobile liability policy afforded coverage to the named insured and "any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the

---

[10] As we noted, *supra*, in discussing *Schmidt*, and as we discuss, *infra*, in footnote 11, many automobile liability policies often provide in the "bodily injury coverage" provision of the policy that "use" specifically includes "loading and unloading" of the insured vehicle. Thus, if an accident involves the loading or unloading a vehicle, the policy definition of "use" controls. In such cases, a court would simply substitute "loading and unloading of a vehicle" for the phrase "use of the vehicle" as it assesses whether the required causal relationship exists to support coverage.

11

scope of such permission."  486 S.W.2d 38, 43 (Mo. App. 1972) (emphasis omitted). The court concluded that in this context, "'use' and 'operation' are not synonymous. . . . '[U]se' of an automobile by an individual involves his employment for some purpose or object of the user while its 'operation' by him involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle." *Id*.

In *Pope v. Stolts,* the Eastern District similarly held that "use . . . [goes] beyond the narrow meaning of the direct mechanical operation performed by the driver [and] encompass[es] the broader concept of employing or putting the vehicle into one's service by an act which assumes at anytime--with the consent of the owner or agent--the supervisory control or guidance of its movements."  712 S.W.2d at 436.  The Eastern District thus defined "use" to be broader in scope "than the act of driving in or riding in an automobile."  *Id*. (citing *Bituminous Cas. Corp. v. Aetna Life & Cas. Co.*, 599 S.W.2d 516, 518 (Mo. App. E.D. 1983) ("[U]se in an omnibus clause imports more than the actual driving of or riding in a vehicle," and includes the act of pushing a disabled vehicle as in doing so, the person is exercising supervisory control over the vehicle's movement)); *see also Harrison v. Tomes*, 956 S.W.2d 268, 269 (Mo. banc 1997) (where in interpreting an exclusion in a homeowner's liability policy for "personal liability [that] arises out of the 'use' of a motor vehicle 'operated' by an insured," the court defined "use" as "a broad term that includes riding in the vehicle").

Thus, unless the facts of a case implicate a specific policy definition of "use,"[11] "use" is a broad term which includes within its scope any means by which a vehicle may be employed or put into service consistent with its nature as a vehicle including, but not limited to, the operation of, driving of, or riding in a vehicle. "Use" of a vehicle alone does not support coverage, however, under American Family's policies. Coverage requires that an accident causing injury "arise out of the use" of a vehicle.

iii. ***"Arising out of the use of a vehicle" requires the vehicle's particular use to create a condition that contributes to cause the accident resulting in injury***

The application of the judicial definitions of "arising out of" and "use" in tandem to determine whether the requisite causal relationship exists between an accident causing injury and the use of a vehicle turns on the factual circumstances in each case. *Pope*, 712 S.W.2d at 436. Clearly established legal principles nonetheless assist in defining the outer parameters of the required causal relationship.

First, an accident causing injury does not "arise out of the use of a vehicle" when the vehicle is merely the "situs" or "locus" of an injury. *Ward*, 897 S.W.2d at 628 ("Missouri cases interpreting 'use' require that the . . . automobile be more than just the 'situs' of the injury."). In plain speak, "'the mere fact that the use of [a] vehicle precede[s]

---

[11] We remind that the broad judicial definition of "use" is not always implicated. For example, if an accident involves the "ownership" or "maintenance" of a vehicle, and if the policy defines "use" to specifically include "ownership" and "maintenance," then a court will necessarily consider whether an accident giving causing injury "arises out of" the ownership or maintenance of the vehicle. As a further example, if an accident involves the loading and unloading of a vehicle, and if the applicable policy defines use to include "loading and unloading," courts necessarily consider whether the accident causing injury arose out of the "loading or unloading" of the vehicle--***an activity which by its very nature need not involve the vehicle itself***. That was precisely the circumstance in *Schmidt*, where the plaintiff's injuries were deemed to "arise out of" the loading and unloading of a truck that was not even in the vicinity when the plaintiff tripped and fell. 182 S.W.2d 181-82; *see also Am. Family Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 747 S.W.2d 174, 176 (Mo. App. W.D. 1988) (addressing whether injuries come within loading and unloading clause of a motor vehicle policy with citation to *Schmidt*); *Esmond v. Bituminous Cas. Corp.*, 23 S.W.3d 748, 751-52 (Mo. App. W.D. 2000) (discussing *Schmidt*, *American Family*, and "arising out of" in a case where driver was injured moving the load in his truck after it shifted).

13

the harm which was later sustained is not sufficient to bring such harm within the coverage of the policy.'" *State Farm Mut. Auto. Ins. Co. v. Flanary*, 879 S.W.2d 720, 722 (Mo. App. S.D. 1994) (quoting *Associated Indep. Dealers, Inc. v. Mut. Serv. Ins. Co.*, 229 N.W.2d 516, 518 (Minn. 1975)).  It is legally insufficient that an injury occurs in or near a vehicle, or while a vehicle is in use, as those facts establish only a temporal and/or spatial relationship between injury and the vehicle's use, and not a causal relationship.

Second, an injury may "arise[] out of a covered use . . . even if the vehicle did not itself cause the injury or the injury did not occur while the plaintiff or another was driving the vehicle." *Esmond v. Bituminous Cas. Corp.*, 23 S.W.3d 748, 752 (Mo. App. W.D. 2000).  In other words, so long as a vehicle's use bears a causal relationship with the accident causing injury, there will be coverage, even if the "accident" does not involve the vehicle itself or its operation.

What the required causal relationship *cannot* and *need not* be to support coverage for an injury "arising out of the use" is thus well established in Missouri.  What the causal relationship *must* be in order to support coverage has proven a bit more elusive to capture in a succinct and clearly understood legal principle.  Some Missouri cases have held that the vehicle must be the "instrumentality" causing the injury.  *See Lemmons v. Prudential Property & Cas. Ins. Co*., 878 S.W.2d 853, 856 (Mo. App. E.D. 1994) ("[U]nder Missouri law the automobile must be more than just the situs of the injury; it must be the instrumentality which caused the injury."); *Ward*, 897 S.W.2d at 628 ("Missouri cases interpreting 'use' require that the uninsured automobile . . . must be the 'instrumentality' which caused the injury.").  At first blush, requiring a vehicle to be the instrumentality of

14

injury seems inconsistent with the principle that an injury need not be "caused" by the vehicle or its operations. The principles are not inconsistent, however. "Instrumentality" is defined as "[a] thing used to achieve an end or purpose; a means or agency through which a function . . . is accomplished." BLACK'S LAW DICTIONARY 870 (9th ed. 2009). The legal definition of "instrumentality" is wholly consistent with the concept of causation. By requiring a vehicle to be the "instrumentality" of an injury, Missouri courts have simply attempted to attach a label to the required causal connection between an accident causing injury and the use of a vehicle. In other words, Missouri courts require the vehicle's *use* to be an instrumentality of the injury.

Missouri courts have also described the "arising out of" nexus as requiring an injury arising out of an "inherent use" of the vehicle. *Ward*, 897 S.W.2d at 629; *Steelman v. Holford*, 765 S.W.2d 372, 378 (Mo. App. S.D. 1989). The "inherent use" is similarly subject to potential misapplication, as at first blush the phrase appears inconsistent with the broad judicial definition of "use." There is no inconsistency, however. "Use" of a vehicle, though broadly defined, nonetheless requires a use consistent with the inherent nature of a vehicle, including, but not limited to, driving, riding in, or operation of a vehicle. *Pope*, 712 S.W.2d at 436. Thus, the requirement that an injury be related to an "inherent use" of a vehicle is simply another way of saying that an injury must bear a causal relationship to a vehicle's nature. *Lemmons*, 878 S.W.2d at 856 ("[A] vehicle is inherently no different from any other place or object and its existence or use becomes no more than the situs of injuries caused by accidents or intentional acts bearing no causal

15

relationship *to its nature as a vehicle. . . .*") (emphasis added) (internal quotation marks omitted).

The requirements that a vehicle's use be the "instrumentality" of an injury, and that an injury arise out of an "inherent use of a vehicle" simply reinforce that a causal relationship must exist between injury and use of a vehicle. For an accident causing injury to "arise out of the use" of a vehicle, the purpose for which the vehicle is being employed must be consistent with the vehicle's inherent nature, and must create a condition which contributes to cause the accident. "'Automobile insurance contracts protect against liability for accidents arising out of the 'use' of vehicle (sic) but they cannot be held to protect against liability for accidents where the use of the automobile was not connected with the accident or the creation of a condition that caused the accident.'" *Bituminous Cas. Corp*, 599 S.W.2d at 519 (emphasis omitted) (quoting *Wiebel v. Am. Farmers Mut. Ins. Co.*, 140 A.2d 712, 714 (Del. Super. 1958)).

Missouri cases have thus consistently determined whether an accident causing injury "arises out of the use" of a vehicle by evaluating the extent to which the particular use of the vehicle contributed to create a condition that caused the accident at issue. In *Suburban Service Bus Co. v. National Mutual Casualty Co.*, a passenger was injured when a bus driver discharged a fire extinguisher on a bus to control unruly passengers. 183 S.W.2d 376 (Mo. App. 1944). The court noted that the bus was being used to transport passengers. *Id.* at 377. That "use" alone did not establish coverage. However, the court found that the passenger's injury "arose out of the use" of the bus to transport passengers *because* "*[w]hat the driver did* for the prevention of disorderly conduct on the

16

part of any of the passengers, causing interference with the safe operation of the bus, or disturbance or annoyance of other passengers, *was* regulatory in character, and ***incident to the use of the bus in transporting passengers*.*" *Id.* (emphasis added). In short, the "use" of the bus (to transport passengers in a commercial vehicle) created a condition (the bus driver's regulatory obligation to control unruly passengers) that caused the accident (the bus driver's discharge of the fire extinguisher to control unruly passengers which injured the plaintiff).

In *Bituminous Casualty Corp.*, plaintiff was injured when a truck mired in mud was disengaged by a bulldozer that then hit the plaintiff. The plaintiff sought coverage under the truck policy, arguing his injuries arose out of the use of the truck because it was being pushed by the bulldozer. 599 S.W.2d at 517. The court agreed that the broad definition of "use" included "impelling [the truck] forward with the bulldozer" as that act constitutes the exercise of "supervisory control or guidance of [the truck's] movements." *Id.* at 518. The court thus concluded that the plaintiff's injuries arose out of the use of the truck because the bulldozer operator's "'use' of the [truck] by pushing it free was directly responsible for 'the creation of a condition that caused the accident,' i.e., the bulldozer moving forward in [plaintiff's] direction behind the truck." *Id.* at 519.

Similarly, in *Whitehead*, a passenger in a deputy sheriff's car was shot when another passenger and the deputy sheriff got into a shoot-out inside the vehicle. 711 S.W.2d at 199-200. The vehicle was being used to transport the plaintiff who was looking for his stolen car. *Id.* That use changed when the deputy sheriff picked up a second individual to give him a ride, only to realize the second passenger was a robbery

17

suspect. *Id.* The deputy sheriff turned into the police station, and the robbery suspect reacted by initiating a gun fight within the vehicle. *Id.* at 200. The mere fact that the plaintiff was injured while riding in the vehicle did not support coverage. The court found coverage because the use of the vehicle (to transport a robbery suspect to the police department) created a condition (the likelihood that a robbery suspect who did not want to go to the police station would take action to avoid capture) that contributed to cause the accident (the shoot-out in the car which injured the plaintiff). *Id.* at 201. The use of the pistol "resulted because the car was being used to take [the robbery suspect] where he preferred not to go. . . . ***That use caused the shooting***." *Id.* (emphasis added).

In contrast, in *Cameron Mutual Insurance Co.*, a rifle lying on the seat of a pickup truck accidentally discharged injuring a person standing outside the truck. 599 S.W.2d at 14. The injured person alleged that the driver engaged in some "overt act . . . after the pickup came to a stop [that] caused the rifle to discharge." *Id.* at 18. This court affirmed the trial court's denial of coverage, finding that "human conduct wholly independent of the operation or use of the vehicle caused the rifle to discharge. . . . [T]he pickup was merely the 'situs' or 'locus' of the accidental discharge of the rifle and, such being the case, there was no causal connection between the discharge of the rifle and the use of the automobile." *Id.* Translated within the framework we have discussed, the use of the automobile (to transport a firearm) did not create a condition that caused the accident (the accidental discharge of the firearm). Though the accident and resultant injury plainly occurred *while* the vehicle was being used, that established only a temporal or spatial, and

18

not a causal, relationship between the injury and the vehicle. Thus, the vehicle was merely the "situs" of the injury.

In *Pope*, plaintiff was injured jump starting a neighbor's vehicle. The plaintiff was leaning over the hood of the stalled vehicle preparing to attach jumper cables to another one of the neighbor's vehicles when the jump vehicle was hit by an uninsured motorist who crossed from the west bound into the east bound lanes. 712 S.W.2d at 435-36. The plaintiff sought coverage under the policy on the jump vehicle. *Id.* at 436. Plaintiff claimed that his injury arose out of the use of the jump vehicle. *Id.* The court disagreed and found an insufficient "causal connection between the plaintiff's 'use' of the [jump vehicle] to jump start the [stalled vehicle] and the injuries received." *Id.* at 437. The "use" of the jump vehicle to jump start another car did not create a condition that contributed to cause the accident (an uninsured motorist crossing from the west bound to the east bound lanes of travel). *Id.*

In *Steelman*, two men in a vehicle who were on their way to visit a girlfriend purposefully discharged a gun from their vehicle. 765 S.W.2d at 375-76. A bullet randomly struck the plaintiff who was across the road outside his own vehicle. *Id.* The plaintiff sought coverage under the homeowner's insurance policy for one of the men, and that insurer sought to avoid the obligation to defend because of an exclusion in the policy for acts causing injury that arise out of the use of a motor vehicle. *Id.* at 378. The court noted that there was no question that the plaintiff was injured *while* the other two men were using their vehicle. *Id.* "That fact, however, is not enough to exclude coverage [from the homeowner's policy]. There must be proof that there was a causal connection

19

between the injury and the 'use' of the motor vehicle in order to hold that the injury arose out of the use of a motor vehicle." *Id*. The court concluded that "[n]o such causal connection is shown under the facts of this case. At best the [vehicle the two men occupied] was merely the 'situs' or 'locus' of [plaintiff's] injury, as the discharge of the rifle was unconnected with the inherent use of the motor vehicle in question." *Id*. As in *Cameron Mutual Insurance Co.*, the evidence did not indicate that the use of the vehicle (to transport two men and a firearm to visit a girlfriend) created a condition that contributed to cause the accident (the decision to randomly but purposefully discharge a firearm from the car). Though the two men were plainly using their car when the accident causing injury occurred, their use was only temporally and spatially, but not causally, related to the plaintiff's injury. The vehicle was merely the "situs" of the accident.

In *Brown v. Shelter Mutual Insurance Co.*, plaintiff appealed the grant of summary judgment denying coverage because a decedent's injury did not arise out of the use of a vehicle. 838 S.W.2d 148 (Mo. App. W.D. 1992). Plaintiff's decedent was shot and killed when a vehicle's driver reached for a handgun to show it to the decedent. *Id*. at 149. The gun accidentally discharged. *Id*. The plaintiff claimed that "the vehicle was used to transport the gun and [the] decedent." *Id*. at 151. The court held the facts could not be distinguished from *Cameron Mutual Insurance Co.* and *Steelman*, and that "[t]he most [plaintiff] has proved is that the vehicle was the 'situs' or 'locus' for the shooting." *Id*. The court concluded that because the plaintiff established only the use of the car to transport a gun, no issue of genuine fact in dispute existed from which a court could

20

conclude that the use of the vehicle to transport a firearm created a condition that caused the gun to discharge. *Id.* The use of the vehicle (to transport a gun and the gun's owner) did not create a condition which contributed to cause the accident (the accidental discharge of the gun).

Finally, in *Ward*, plaintiff's decedent was killed in his vehicle by a drive-by shooter from another vehicle. Plaintiff's decedent sought uninsured motorist coverage, and the trial court granted summary judgment in favor of the insurer because the decedent's injuries did not arise out of use of the uninsured vehicle. 897 S.W.2d at 628. Our Eastern District affirmed, holding that "[i]njuries inflicted on a victim of a drive-by shooting by the occupant of a motor vehicle are not injuries which arise out of the "use" of the motor vehicle because the motor vehicle is merely the 'situs' or 'locus' of the cause of the victim's injuries and the discharge of the gun is unconnected to the inherent use of the motor vehicle." *Id.* at 629. The use of the uninsured vehicle[12] (to transport a person and a firearm) did not create a condition that caused the accident (the intentional shooting of another person by an occupant of the uninsured vehicle). Though the vehicle's use placed the shooter in a temporal and spatial relationship with the plaintiff, that established only that the vehicle was the "situs" or "locus" of the injury, and did not establish a causal connection between the vehicle's use and the accident causing the injury. As was observed in *Flanary*, the relationship between a vehicle's use and the accident that causes

---

[12] When coverage is sought under an uninsured motorist provision the relevant "use" to which the court must direct its inquiry is the use of the uninsured vehicle. *See Esmond*, 23 S.W.3d at 752 (holding that injury must arise out of the use of the uninsured motor vehicle and not the injured person's vehicle.)

21

the injury requires more than "the mere fact that the use of the vehicle preceded the harm that was later sustained." 879 S.W.2d at 722 (internal quotation marks omitted).

Though not involving automobile liability policies, it is noteworthy that in the other scenarios discussed, *supra*, where the phrase "arising out of" has been defined, our courts have applied a consistent standard to determine whether the required causal relationship has been established. In *Capitol Indemnity*, the insurer claimed that a former employee's claims for injuries under a commercial liability policy were excluded from coverage because they arose out of the employment-related practices of the insured employer. 340 F.3d at 550. The Eighth Circuit found "such a relationship exists here, as the incidents of which [plaintiff] complains, specifically false arrest, false imprisonment, and slander, all flow directly from [plaintiff's] employment with [insured]." In *Kammeyer v. Board of Education*, the court considered whether a workplace injury "arose out of" the injured worker's employment. 393 S.W.2d 122 (Mo. App. 1965). The court observed that "arising out of" required there to be a "causal connection between the nature of the employee's duties or the conditions under which she was required to perform them and the resulting injury . . . so that the accident can fairly be said to have been ***a rational consequence of some hazard connected with (or aggravated by) the employment***." *Id.* at 127 (emphasis added). Similarly, in *Felden v. Horton & Coleman, Inc.*, the court held the standard for testing whether injuries by a workplace accident "arise out of" the employment is "always the same to wit, ***Did the employment increase the danger***?" 135 S.W.2d 1115, 1117 (Mo. App. 1939) (emphasis added).

22

In summary, "[n]ot every tortious act occurring inside a vehicle constitutes use of that vehicle for imposing liability under an automobile liability policy." 6B APPELEMAN ET AL., INSURANCE LAW AND PRACTICE WITH FORMS section 4317 (Supp. 2011). Instead, for an accident causing injury to "arise out of the use" of a vehicle, the use of a vehicle must be consistent with the vehicle's nature as a vehicle, and must create a condition that contributes to cause the accident. If the uncontroverted facts establish only that an injury occurred *while* a vehicle was being used, then the injury does not arise out of the use of the vehicle as a matter of law. *See Brown*, 838 S.W.2d at 151.

When applied to the instant case, the aforesaid discussion requires us to affirm the trial court's grant of summary judgment in favor of American Family.

(v) ***The uncontroverted facts establish that Smith's vehicle was merely the "situs" of Walden's injuries***

It is Walden's burden to establish that her injuries are covered under the uninsured motorist provisions in her American Family policies. *See generally Oates v. Safeco Ins. Co.*, 583 S.W.2d 713, 715 (Mo. banc 1979). As the party defending against coverage, American Family filed a motion for summary judgment pursuant to Missouri Supreme Court Rule 74.04(b) setting forth uncontroverted facts it claimed established a lack of coverage as a matter of law. It was then Walden's burden under Rule 74.04(c)(2) to file a response that admitted or denied American Family's factual statements and that "set forth additional material facts that remain in dispute" preventing the entry of summary judgment as a matter of law. Walden admitted all of American Family's factual statements and identified no facts in genuine dispute. Instead, Walden filed her own

23

motion for summary judgment claiming she was entitled to coverage as a matter of law based on the same uncontroverted facts relied upon by American Family. All that remained, therefore, was for the trial court to determine whether the uncontroverted facts established that the accident which caused Walden's injury "arose out of the use" of Smith's vehicle, a question of law. *Ward*, 897 S.W.2d at 629.

The trial court found that the uncontroverted facts could not establish the required causal relationship between the accident causing Walden's injury and Smith's use of his vehicle. We agree. The uncontroverted facts establish that Smith was using his vehicle to transport his dogs.[13] The uncontroverted facts establish that Walden was injured when one of the dogs bit her. The uncontroverted facts establish that Walden's injury occurred while Smith was using his vehicle to transport his dogs. However, the uncontroverted facts do not establish that Smith's use of his vehicle to transport his dogs created a condition that caused the dog to bite Walden. Nor did Walden identify any facts remaining in genuine dispute on this critical element of her claim for coverage that would prevent the entry of judgment as a matter of law. At most, the uncontroverted facts established that Smith's vehicle was the "situs" of Walden's injuries. *Brown*, 838 S.W.2d at 151 (summary judgment proper where uncontroverted facts established only that vehicle was used to transport a gun that accidentally discharged, as "[t]he most [plaintiff] has proved is that the vehicle was the 'situs' or 'locus' for the shooting").

---

[13] As noted, *supra*, Walden wordsmith's this use from time to time, periodically referring to Smith's car as a "dog cage," as used to "carriage and confine" the dogs, and as a "moving kennel."

24

This conclusion is underscored by Walden's summary judgment pleadings where Walden alleged that:

> But for Smith's use of his vehicle as a cage for his dogs, the dogs would not have been at the parking lot, and they would not have bitten Walden. Therefore, Walden's injuries arose out of Smith's use of his vehicle as a dog cage.

[L.F. p. 73; *see also* L.F. p. 88]. Plainly, Walden's "but-for" assertions establishes a temporal and spatial relationship between Smith's use of his vehicle and Walden's injury, but not a causal relationship between the use of the vehicle and the creation of a condition that caused one of Smith's dogs to bite Walden.

> The trial court thus properly concluded that Walden:

> has not asserted any facts which establish any injury caused by the uninsured motorist's use of the uninsured motor vehicle itself. [Walden's] injury was caused by the dog bite. There are no facts which allege the motor vehicle was the instrumentality of the injury. There are no facts that assert that [Smith] was negligent in the inherent "use" of his vehicle. The automobile was not involved in the injury. . . . There is nothing about [Smith's] use of the truck that caused the attack and nothing about [Smith's] use of the automobile which caused [Walden's] injury. The vehicle was not an active accessory to the injury and was not an essential or even significant element that lead [sic] to the injury. The allegations of negligence against [Smith] are totally independent from the "use" of the vehicle itself.

Indeed, the uncontroverted facts established only that "human conduct [Smith's negligence in failing to warn Walden or to restrain his dog] wholly independent of the operation or use of the vehicle caused the [dog to bite Walden]." *Cameron Mut. Ins. Co.*, 599 S.W.2d at 18; *see also Schmidt*, 182 S.W.2d at 184 ("[An] injury, of course, [does] not arise out of the use of [a vehicle] if it was directly caused by some independent act, or

25

intervening cause wholly disassociated from, independent of and remote from the use of the [vehicle].").

Walden summarily argues in her Brief that Smith's use of his vehicle was a factor in contributing to cause Walden's injury. Walden baldly asserts in her point relied on that Smith's use of his vehicle as a "moving dog kennel" "facilitat[ed] the dog attack." [Appellant's Brief, p. 5]. She argues in her Brief with no reference to the record that "the physical structure and nature of Smith's pickup truck was instrumental in allowing the dog to be at head level and because Smith completely rolled down his driver's side window the motor vehicle facilitated the dog attack on Walden." [Appellant's Brief, p. 12]. She argues in her Brief with no reference to the record that "animals are living, animate creatures and can at times be unpredictable." [Appellant's Brief, p. 11]. These are factual assertions. They were not raised by Walden as properly supported facts in genuine dispute in the proceedings before the trial court. Rule 74.04(c)(2). They cannot be raised for the first time on appeal.[14]  *Sheedy v. Mo. Hwys. & Transp. Comm'n*, 180 S.W.3d 66, 70 (Mo. App. S.D. 2005) ("[A]ppellate review of a decision to grant summary judgment is limited to the issues put before the trial court."); *Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 85 (Mo. App. E.D. 1999) (holding that the court of appeals "[is] confined to considering the same information that the trial court considered in rendering its decision on a motion for summary judgment").

---

[14] We express no opinion as to whether the unsupported factual assertions raised for the first time on appeal would have been sufficient to establish a material issue of fact in genuine dispute that would have prevented the entry of summary judgment on the issue of coverage had they been properly raised in the trial court. Further, the import of our ruling today is not to suggest that there is no set of factual circumstances involving a dog bite and the use of a vehicle that would fall within the "arising out of the use" language. Instead, our ruling merely requires what Missouri courts have always required in these circumstances--factual allegations that invoke a "causal relationship" between the "use" a vehicle and the accident causing injury.

26

More to the point, a cursory review of the record reveals that Walden's true objective before the trial court was not to establish the "causal relationship" required by Missouri law, but instead to advocate for a change in Missouri law. In the trial court, Walden relied exclusively on Smith's use of his vehicle as a dog cage standing alone to support the conclusion that her injuries "arose out of" the use. Walden cited to a few dog bite cases from other jurisdictions,[15] and represented that in those cases, an injury is deemed to "arise out of the use" of a vehicle merely if the injury occurs while the vehicle is being used in a foreseeable manner. [L.F. 175] Walden advocated abandonment of Missouri's requirement of a "causal relationship" in lieu of a foreseeable use or "substantial nexus" test. Walden acknowledged in her pleadings before the trial court that her position is *not* consistent with Missouri law, and asked the trial court to depart from Missouri precedent. [L.F. 176] She argued that "the current test in Missouri for determining when an injury arises out of the use of an automobile is inadequate." [L.F. 176]

Walden's intent to advocate for a change in Missouri law continues on appeal. Walden argues that because the dictionary defines "use" as "employ[ing] for . . . a given purpose," we should conclude that *any* injury that occurs *while* a vehicle is being used in a foreseeable manner "arises out of the use" of the vehicle. [Appellant's Brief, pps. 9, 11]. Walden's construction of the phrase "arising out of the use" of a vehicle represents a dramatic departure from established precedent, and would require us to overrule or ignore

---

[15] *E.g.*, *Transamerica v. Farmers Ins. Exch.*, 463 N.W.2d 641 (N.D. 1990); *Diehl v. Cumberland Mut. Fire Ins. Co*., 686 A.2d 785 (N.J. Super. Ct. App. Div. 1997).

27

the holdings in every Missouri case herein summarized. Walden's construction would require us to rewrite American Family's policies to delete the judicially defined phrase "arising out of the use," substituting in its stead the phrase "while using."

We are not inclined to reject the established lineage of Missouri cases which define "arising out of" to require a causal relationship, and not merely a temporal or spatial relationship, and which thus require a vehicle's use to be consistent with its nature as a vehicle, and to create a condition that contributes to cause an accident resulting in injury.[16]

Point denied.

## Conclusion

The trial court's entry of summary judgment is affirmed.


_____
Cynthia L. Martin, Judge


All concur

---

[16] It is noteworthy that numerous non-jurisdictional cases not mentioned by Walden have denied coverage in dog bite cases employing a definition of "arising out of the use" of a vehicle that is virtually indistinguishable from Missouri law. *See Or. Mut. Ins. Co. v. Nat'l Gen. Ins. Co.*, 436 Fed. App'x 802 (9th Cir. 2011); *Boatright v. State Farm Mut. Auto. Ins. Co.*, No. 3:09-cv-946-J-32MCR, 2010 WL 2220250 (M.D. Fla. June 2, 2010); *State Farm Mut. Auto. Ins. Co. v. Grisham*, 18 Cal. Rptr. 3d 809 (Cal. Ct. App. 2004); *Underwriters Guarantee Ins. Co. v. Therrien*, 640 So. 2d 234 (Fla. Dist. Ct. App. 1994); *Am. States Ins. Co. v. Allstate Ins. Co.*, 484 So. 2d 1363 (Fla. Dist. Ct. App. 1986); *Keppler v. Am. Family Mut. Ins. Co.*, 588 N.W.2d 105 (Iowa 1999); *Farmers Union Coop. Ins. Co. v. Allied Prop. & Cas. Ins. Co.*, 569 N.W.2d 436 (Neb. 1997); *Feldkamp v. USAA Ins. Co.*, 743 N.E.2d 405 (Ohio Ct. App. 2000); *Alvarino v. Allstate Ins. Co.*, 537 A.2d 18 (Pa. Super. Ct. 1988); *Heringlake v. State Farm Fire & Cas. Co.*, 872 P.2d 539 (Wash. Ct. App. 1994).