# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2035

_____

Ripal Patel

*Plaintiff - Appellant*

v.

LM General Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 15, 2019
Filed: May 3, 2019

_____

Before LOKEN, GRASZ, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

The issue presented by this appeal is whether the widow of Maulik Patel, the victim of a drive-by shooting while sitting in his car at a traffic light, may recover damages under the Uninsured Motorists (UM) Coverage provisions of the automobile liability policy issued to the Patels by LM General Insurance Company.

The district court[1] granted summary judgment for LM General, concluding there was no UM coverage because any liability of the uninsured motorist and his occupants to Patel did not "arise out of the use" of the uninsured motor vehicle. "Maulik's injury was not caused by an uninsured vehicle," the district court explained; "the shots just happened to come from an uninsured vehicle." Applying Missouri law, we affirm.

After the drive-by shooting, Maulik's widow, Ripal, sued LM General to recover the Policy's UM coverage limits, $250,000. In submitting LM General's motion for summary judgment, the parties agreed the following facts are undisputed:

> "On January 11, 2016, Maulik . . . was killed by gun fire while stopped in traffic . . . near Goodfellow Boulevard and Interstate 70 in St. Louis, Missouri."

> "The occupants of an unknown vehicle fired several shots from the unknown vehicle, hitting Maulik and his 2011 Hyundai Sonata. Maulik exited his vehicle and was shot again outside of the vehicle."

> The Policy provides UM coverage limits of $250,000 for each person. Both Maulik and Ripal are "insureds" under the UM Coverage part.

> "The unidentified vehicle that the shooters occupied never hit or otherwise made physical contact with Maulik or his vehicle."

The parties agree that Missouri law governs the UM coverage issue in this diversity action. The Missouri insurance statutes provide in relevant part:

> No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued . . . unless coverage is provided [in not less than

---

[1] The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

required minimum limits] for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury . . . resulting therefrom.

Mo. Rev. Stat. § 379.203(1). Consistent with this statute, LM General's Policy issued to Maulik and Ripal Patel included a UM Coverage part:

**INSURING AGREEMENT**
**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":
**1.** Sustained by an "insured"; and
**2.** Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Thus, the Policy provided UM coverage to Maulik if the owner or operator of the unidentified vehicle that the shooters occupied is liable for his damages, an issue the district court did not address, *and* if that liability "arise[s] out of the ownership, maintenance, or use of the 'uninsured motor vehicle.'" Whether the insured's injury arose out of the use of a vehicle is a question of law. Ward v. Int'l Indem. Co., 897 S.W.2d 627, 629 (Mo. App. 1995).

The insuring term "arising out of the . . . use" of an automobile has been interpreted in numerous Missouri cases addressing diverse coverage issues. Many cases have turned on whether the *insured's* liability to a third party was covered by an automobile liability policy because the third party's injuries arose out of the insured's use of an insured auto, including the leading case of Schmidt v. Utilities Ins. Co., 182 S.W.2d 181, 183 (Mo. 1944). As consistently construed by later Missouri Court of Appeals decisions, Schmidt "clearly held that 'arising out of' requires proof of a causal connection, though the standard of causation is broader than 'proximate

cause.'" Walden v. Smith, 427 S.W.3d 269, 274 (Mo. App. 2014); see Pope v. Stolts, 712 S.W.2d 434, 437 (Mo. App. 1986) (requiring "some causal connection between an injury and the use" of an automobile); Cameron Mut. Ins. Co. v. Ward, 599 S.W.2d 13, 15 (Mo. App. 1980). In defining the requisite causal connection, "[s]ome Missouri cases have held that the vehicle must be the 'instrumentality' causing the injury." Walden, 427 S.W.3d at 278, citing Lemmons v. Prudential Prop. & Cas. Ins. Co., 878 S.W.2d 853, 856 (Mo. App. 1994).

This case raises the question whether injury intentionally inflicted by the occupants of an uninsured automobile was covered because the uninsured motorist's liability arose out of use of the uninsured auto. This issue would not arise in a typical auto liability coverage case like Schmidt because the *insured's* intentional acts are excluded from coverage, exclusions which are upheld on public policy grounds. But § 379.203 requires UM coverage whenever an uninsured motorist is liable for injury *to the insured* arising out of the motorist's use of his uninsured auto. Thus, this coverage applies whether the motorist's tortious acts were negligent or intentional. See Keeler v. Farmers & Merchs. Ins. Co., 724 S.W.2d 307, 311 (Mo. App. 1987).

The Missouri Court of Appeals decided this UM coverage issue in Ward v. International Indemnity, a drive-by shooting case nearly on all-fours with this case. In Ward, the insured while driving his car was shot and killed by a passenger in another, unidentified vehicle. The insured's mother argued that the other vehicle "was an instrumentality of the shooting, that . . . aided and abetted the shooter." 897 S.W.2d at 628. The Court rejected this argument. "Injuries inflicted on a victim of a drive-by shooting by the occupant of a motor vehicle are not injuries which arise out of the 'use' of the motor vehicle because the motor vehicle is merely the 'situs' or 'locus' of the cause of the victim's injuries and the discharge of the gun is unconnected to the inherent use of the motor vehicle." Id. at 629.

-4-

The Court of Appeals applied the same reasoning in denying UM coverage for damages caused by intentional tortious acts in other cases. In Ford v. Monroe, 559 S.W.2d 759 (Mo. App. 1977), the insured's passenger sued the auto insurer for UM coverage for injury caused by a drive-by shooter. The Court denied coverage in part because the bullet injury was not one "arising out of the . . . use of such uninsured automobile." Id. at 763. In Lemmons, 878 S.W.2d at 856-58, the Court denied UM coverage for injuries caused by fisticuffs that followed an auto accident because the uninsured auto was not "the instrumentality which caused the injury." And in Walden, the Court denied UM coverage to an insured bitten by a pit bull terrier who lunged through the open window of a parked car because, while the motorist was using his auto to transport the dogs, "[a]t most, the uncontroverted facts established that Smith's vehicle was the 'situs' of Walden's injuries." 427 S.W.3d at 283. Therefore, "human conduct . . . wholly independent of the operation or use of the vehicle caused" the insured's injury. Id., quoting Cameron, 599 S.W.2d at 18.[2]

On appeal, Ripal Patel argues the district court erred in relying on this formidable array of Court of Appeals precedents because they are inconsistent with Schmidt, the Supreme Court of Missouri decision that is controlling precedent in this diversity action. It is of course true that we do not follow Missouri Court of Appeals decisions if we predict the Supreme Court of Missouri would conclude they ignored or misconstrued that Court's prior controlling precedent. See Rashaw v. United Consumers Credit Union, 685 F.3d 739, 744 (8th Cir. 2012), cert. denied, 568 U.S. 1159 (2013). But here, the Missouri Court of Appeals has consistently cited Schmidt,

_____

[2]Similar reasoning was adopted in Steelman v. Holford, 765 S.W.2d 372 (Mo. App. 1989), where an auto liability insurer argued it had no duty to defend its insured for injuries caused by his random shooting from a moving auto because the policy excluded intended injuries "arising out of the . . . use" of the insured's auto. The Court held the exclusion did not apply because "[a]t best, the jeep was merely the 'situs' or 'locus' of [the plaintiff's] injury, as the discharge of the rifle was unconnected with the inherent use of the motor vehicle in question." Id. at 378.

recently referring to it as "the seminal Missouri case construing the phrase 'arising out of' in an automobile liability policy." Walden, 427 S.W.3d at 274.

We conclude the Missouri Court of Appeals has not ignored or misconstrued the decision in Schmidt. Rather, that case is materially distinguishable. In Schmidt, a coal company's drivers used wedge-shaped blocks as ramps to back their trucks from the street onto a sidewalk to complete delivery of coal to a hospital. After putting coal into the hospital's bin under the sidewalk, the drivers used the blocks to move the trucks back to the street and then placed the blocks on the sidewalk for future use, where a pedestrian later tripped over them and was injured. 182 S.W.2d at 181-82, 185. In concluding the pedestrian's claim was covered by the coal company's automobile liability policy, the Supreme Court held that the injury arose out of the use of the insured trucks because the drivers' actions in leaving the blocks on the sidewalk were "directly connected with and necessarily incident to the operation and use of the trucks as motor vehicles in the transportation and delivery of coal." Id. at 185; cf. State Farm Mut. Auto. Ins. Co. v. Whitehead, 711 S.W.2d 198, 200-01 (Mo. App. 1986). Here, in contrast, the drive-by shooters' use of firearms to kill Maulik was not "directly connected and necessarily incident to the operation and use" of the uninsured motor vehicle. As in Cameron and the above-cited drive-by shooting cases, "human conduct wholly independent of the operation or use of the vehicle caused" the insured's injury. 599 S.W.2d at 18.

Ripal further argues that the drive-by shooting in fact arose out of the use of the uninsured vehicle because a detective investigating the shooting testified that "[t]ypically, in a drive by shooting, these suspects will use one vehicle . . . for conveyance to the location, typically stay within that vehicle, commit the crime and then continue on." However, as the Court of Appeals reasoned in Ward, "Injuries inflicted on a victim of a drive-by shooting by the occupant of a motor vehicle are not

injuries which arise out of the 'use' of the motor vehicle because . . . the discharge of the gun is unconnected to the inherent use of the motor vehicle." 897 S.W.2d at 629.

For the foregoing reasons, the judgment of the district court is affirmed.

_____