# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3635
_____

Great American Alliance Insurance Company

*Plaintiff - Appellant*

v.

Windermere Baptist Conference Center, Inc.; Jeremy Richards; Karlee Richards

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: February 12, 2019
Filed: July 29, 2019

_____

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

While attending Bible camp, a child fell from a 50-foot-high zipline. The parties dispute who potentially bears financial responsibility for her injuries. On one side is the conference center that operated the zipline. On the other is the Bible camp's insurer. We conclude that, under the plain language of the insurance policy, the insurer is not responsible for the conference center's alleged negligence.

I.

Windermere Baptist Conference Center is located on the shores of Missouri's Lake of the Ozarks. For many years, Student Life, an affiliate of the Southern Baptist Convention, has used Windermere to host its camps. According to their contract, Student Life rents group lodging and conference rooms from Windermere. In return, campers have access to Windermere's common spaces and some of its recreational areas, including the swimming pool, miniature-golf course, and hiking trails. But a few recreational areas—including "the Edge," Windermere's ropes and zipline course—are not freely available to campers. Rather, to access the Edge, campers must make separate arrangements and pay an additional fee.

Karlee Richards and her youth group attended a Student Life Bible camp. During their free time one afternoon, they arranged to use the Edge. In addition to scheduling a specific time with Windermere and paying the entrance fee, the campers had to submit a permission and release form signed by a parent. Midway through the course, a Windermere employee forgot to reconnect Karlee's harness to the zipline's tether, and she fell 50 feet to the ground.

This tragic accident led to extensive litigation between Windermere and the Richards family. Eventually, Windermere asked Student Life's insurer, Great American Alliance Insurance Company, to indemnify it as an additional insured under Student Life's general-liability insurance policy. Great American refused on the ground that the accident did not "ar[ise] out of the . . . use of . . . premises leased" to Student Life.

Great American then filed a separate declaratory-judgment action in federal district court against, as relevant here, Windermere, Karlee, and Karlee's father. After both sides moved for summary judgment, the court ruled that Windermere was covered by Student Life's policy. Great American appeals this decision, which we

review de novo.  *See United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 883 (8th Cir. 2014).

## II.

Student Life's insurance policy covered Windermere as an additional insured only if its "liability ar[ose] out of the ownership, maintenance[,] or use of that portion of the premises leased to [Student Life]."  The crucial question, then, is whether Karlee's zipline accident "ar[ose] out of" the use of premises that Windermere "leased to" Student Life.  Neither phrase is defined in the policy, so we give each the "ordinary meaning . . . that the average layperson would reasonably understand." *Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999) (citation omitted).

The common understanding of a "lease" is a "contract by which one conveys" property for a certain period of time "for a specified rent or compensation." *Webster's Third New International Dictionary* 1286 (2002).  Combining this definition with the specific terms of the policy, the only "premises" Windermere "conveyed" to Student Life were the conference rooms and the lodging specified in the contract.  Their contract did not mention any other areas, much less give Student Life a "right [to] exclusive possession" of them, which is "the hallmark of a lease." *Kan. City Area Transp. Auth. v. Ashley*, 485 S.W.2d 641, 645 (Mo. Ct. App. 1972); *see also Kimack v. Adams*, 930 S.W.2d 505, 507 (Mo. Ct. App. 1996) (defining a lease as a "contract . . . for *exclusive possession* of [property] for a determinate period" (emphasis added) (citation omitted)).

The Edge was no exception.  It was off-limits to any campers who did not make special arrangements in advance, including Karlee and her youth group.  To be sure, campers could get right up to the security fence surrounding the Edge.  But the area itself was at all times under the control of Windermere's employees.  Student

Life, in other words, not only lacked exclusive possession of the Edge, it had no right to possession of it at all.

Windermere responds that even if it did not lease the Edge, its liability still "ar[ose] out of" Student Life's lease of the conference rooms and lodging. Under Missouri law, the phrase "arising out of" requires something less than proximate cause but something more than a simple "but-for . . . temporal and spatial relationship," which is all that is present here. *Walden v. Smith*, 427 S.W.3d 269, 283 (Mo. Ct. App. 2014) (interpreting a car-insurance policy that covered damages "aris[ing] out of the use of" the car); *see also Capitol Indem. Corp. v. 1405 Assocs., Inc.*, 340 F.3d 547, 550 (8th Cir. 2003) (explaining that "arising out of" means "originating from," "growing out of," "having its origin in," or "flowing from" (citation omitted)).

Karlee's accident only "arose out of" Student Life's use of the leased premises in the sense that she would not have used the Edge but for her attendance at Bible camp. Nothing about the "use" of these areas caused the accident or made it more likely to occur. *See Walden*, 427 S.W.3d at 283 (denying coverage because the "use of the vehicle [did not] creat[e] . . . a condition that caused" the accident). This means that the connection here is only a "temporal and/or spatial" one," *id.* at 278; *see also State Farm Mut. Auto. Ins. v. Flanary*, 879 S.W.2d 720, 722–23 (Mo. Ct. App. 1994) (similar), not one "originating from" or "having its origin in" Student Life's use of the leased premises, *Capitol Indem. Corp.*, 340 F.3d at 550 (citation omitted).

Indeed, the Missouri Court of Appeals reached a similar conclusion in *U.S. Fidelity & Guaranty v. Drazic*, 877 S.W.2d 140 (Mo. Ct. App. 1994). *Drazic* involved a slip-and-fall injury in a parking lot to a woman who worked in a nearby building. When the parties disagreed about whether the building owners were entitled to additional-insured coverage under her employer's insurance policy, the court held that the accident did not arise out of her employer's lease, even though

the parking lot "immediately adjoin[ed]" the building and employees would almost certainly need to cross it. *Id.* at 141–43.

Unlike the employee in *Drazic*, Student Life's campers could still use the leased spaces without going anywhere near the Edge. So, following the path that *Drazic* has laid out for us, Windermere's potential liability for Karlee's injuries could not possibly have "aris[en] out of the . . . use of . . . the premises leased" to Student Life.

## III.

We accordingly reverse and remand for the entry of summary judgment in favor of Great American.

_____